STATE of Alaska, DEPARTMENT OF HEALTH & SOCIAL SERVICES, Appellant,

v.

NORTH STAR HOSPITAL, Appellee.

No. S–14074.

Supreme Court of Alaska.

July 20, 2012.

---

Thomas A. Dosik, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellant.

Stephen D. Rose, Garvey Schubert Barer, Seattle, Washington, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

The Office of Rate Review, a division of the State Department of Health and Social Services (DHSS), set a Medicaid payment rate for North Star Hospital based on a 2005 home office cost report that did not reflect a substantial increase in costs incurred by North Star in 2006. While making its determination, the Office of Rate Review had access to an unaudited version of a 2006 home office cost report that reflected these increased costs. The audited version of the 2006 home office cost report was delayed through no fault of either party.

The Office of Rate Review refused to grant North Star's request for an interim rate pending the audit of the 2006 report or to reconsider the rate once it received the audited 2006 report. In response, North Star administratively challenged the Office of Rate Review's rate determination. The DHSS Commissioner concluded that the Office of Rate Review's refusal to consider data from the unaudited 2006 report was proper and that the Office of Rate Review was not required to grant North Star a temporary rate preceding completion of the audit of the 2006 report. The Commissioner also concluded that DHSS did not have jurisdiction to determine whether 7 Alaska Administrative Code (AAC) 150.170(b)(12), which establishes which home office costs are to be considered, was in conflict with AS 47.07.070, which requires that the rate be based upon reasonable costs. North Star appealed the decision to the superior court and the superior court reversed, concluding that because the audited 2006 home office cost statement was overdue at no fault of North Star, it was error for the Office of Rate Review to refuse to grant North Star's request for a temporary rate in order to consider the audited version of the 2006 report. We affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

At least once every four years, the Office of Rate Review must determine prospective Medicaid base payment rates in compliance with the methodology and criteria established in 7 AAC 150.160.[1] On December 19,

---

1. 7 AAC 150.160(a) (2012) provides:

   The department will use the following methodology and criteria in reviewing and establishing prospective payment rates for the Medicaid program:

   (1) the department will consider the following with the relative importance of each criterion being a matter of department discretion:
       (A) whether the costs are related to patient care and are attributable to the Medicaid program;

2007, the Office of Rate Review held an informal public hearing to aid in its determination of several hospitals' base rates for fiscal years 2008–2011. Medicaid providers are entitled to reimbursement based on this base rate, regardless of the actual cost incurred in subsequent years. Consequently, the base rates set by the Office of Rate Review affect up to four years of Medicaid payments.

One component of the prospective base rate calculation is the home office cost[2] of the hospital provider. 7 AAC 150.170(b)(12) provides:

> [A]llowable home office costs may not exceed the most recent Medicare-audited Medicare home office cost statement available in the department's files 60 days before the beginning of a re-based prospective rate year; if the Medicare-audited Medicare home office cost statement is not from the same year as the facility's base year, the costs will be inflated to the facility's base year using the methodology described in 7 AAC 150.150.

At the time of the hearing, the fiscal year 2005 audited home office cost report for North Star Hospital was on file 60 days before the beginning of the re-basing year. But before the hearing, North Star submitted to the Office of Rate Review an unaudited fiscal year 2006 home office cost report that reflected a substantial—almost 100%—increase in its home office costs. The audit-

ed version of the 2006 report was unavailable because, despite North Star's timely submission of the 2006 report to the federal auditor, the federal auditor was late in completing the audited version of that home office cost report.

In a letter to the Office of Rate Review on December 17, 2007, North Star objected to the payment rate based on the 2005 home office cost report. North Star argued that the base rate did not comply with AS 47.07.070(b)(1), which requires that when "determining the rates of payment for health facilities for a fiscal year, the department shall ... set rates for facilities that are based on ... reasonable costs related to patient care."[3] North Star further argued that it "seems patently unfair to allow huge swings in the calculations upon which rates are set to be determined by the speed with which a fiscal intermediary completes its audit." North Star requested that either the "known 2006 home office costs be allowed, or the rate setting ... be delayed until the 2006 audited home office cost is available."

Under 7 AAC 150.030(b), the Office of Rate Review may establish temporary prospective rates at its discretion.[4] At the December 19 hearing, North Star requested a temporary rate pending the final determination. The Office of Rate Review denied North Star's request.

---

(B) whether the payment rate is reasonably related to costs;

(2) the department will set annual rates established for the facility's fiscal year;

(3) base years may be changed to more current years and may be subject to audit; the department may determine the timing for a re-basing under this paragraph and whether and when to conduct an audit;

(4) for all facilities, except facilities with rate agreements established under 7 AAC 150.190, the department

  (A) will perform a re-basing for the first fiscal year beginning after notification to the facilities that a re-basing will be done;

  (B) will perform a re-basing no less than every four years; and

  (C) may perform a re-basing sooner than every four years.

2. Home office costs are the costs attributable to the central headquarters of Medicaid providers with multiple facilities.

3. AS 47.07.070(b) states:

> In determining the rates of payment for health facilities for a fiscal year, the department shall, within the limit of appropriations made by the legislature for the department's programs under this chapter and under AS 47.25.120–47.25.300 for that fiscal year, including anticipated available federal revenue for that fiscal year, set rates for facilities that are based on (1) reasonable costs related to patient care; and (2) audit and inspection results and reports, when the audit or inspection is conducted under AS 47.07.074.

4. 7 AAC 150.030(b) provides: "The department may establish temporary prospective payment rates. The final rate approved by the department supersedes the temporary rate, and payments will be adjusted in accordance with the final rate."

At the same December 19 hearing, the base rates for Providence Alaska Medical Center and Providence Kodiak Island Medical Center were reviewed. Prior to the meeting, the Office of Rate Review had given each of these two facilities desk reviews which recommended a base rate.[5] Because 7 AAC 150.200(b)(3) states that a facility has at least 40 days to respond to the desk review[6] and because Providence Alaska Medical Center and Providence Kodiak Island Medical Center received their desk reviews on dates leaving less than 40 days to respond to their reviews, both Providence facilities requested temporary rates so they could adequately respond to their desk reviews. These requests were granted. The final Medicaid rate for Providence Alaska Medical Center was issued on March 17, 2008. The final Medicaid rate for Providence Kodiak Island Medical Center was issued on March 28, 2008.

On December 28, 2007, North Star was informed that the Office of Rate Review had set its base year rate, effective January 2008, at $562.12 "per patient day" using the audited 2005 home office cost report already on file. On January 22, 2008, North Star again requested that the Office of Rate Review use the unaudited 2006 home office cost report instead of the 2005 home office cost report or that it delay its decision until the audited 2006 home office cost report was returned by the fiscal intermediary.

On February 13, 2008, the Office of Rate Review refused both of North Star's requests. On March 13, 2008, North Star received the federal audit of the 2006 home office cost report. North Star sent the audited report to the Office of Rate Review that same day, and the audited numbers were virtually identical to the home office costs found in the unaudited 2006 home office cost report. Reliance on the audited 2006 home office cost report, rather than the 2005 home office cost report, would have resulted in an increased payment to North Star of $30.19 per patient day.

## B. Proceedings

North Star appealed the Office of Rate Review's decision to the Commissioner of the Department of Health and Social Services pursuant to AS 44.62.540.[7] Larry Pederson was appointed as the hearing officer for DHSS. North Star sought to revoke the imposed rate and require the Office of Rate Review to consider the 2006 home office cost report. The Office of Rate Review urged that the Commissioner rule as a matter of law that the rate was correct. On April 16, 2009, the hearing officer issued a proposed decision that upheld the Office of Rate Review's imposed Medicaid base rate at $562.12. On April 21, 2009, the Commissioner adopted the proposed decision as DHSS's final administrative action on the matter.

North Star appealed this decision to the superior court under AS 44.62.560.[8] The superior court reversed the Commissioner's decision, concluding that the Office of Rate Review erred by refusing to grant North Star's request for a temporary rate until the audited 2006 home cost report was returned by the federal auditor. The superior court

5. 7 AAC 150.200(i)(2) defines desk review as: "[T]he department's review that is conducted without the auditor visiting the facility being desk-reviewed for the purpose of conducting tests or the initial phase of a field audit."

6. 7 AAC 150.200(b)(3) provides:

[A] facility may file with the department a response to the department's field audit or desk review report no more than 40 days after the date the department issues the report; the department may make additional related adjustments if the facility makes objections to the department's adjustments; the department will provide to the facility a description of any additional adjustments[.]

7. AS 44.62.540(a) provides in relevant part: "The agency may order a reconsideration of all or part of the case on its own motion or on petition of a party. To be considered by the agency, a petition for reconsideration must be filed with the agency within 15 days after delivery or mailing of the decision. The power to order a reconsideration expires 30 days after the delivery or mailing of a decision to the respondent."

8. AS 44.62.560(a) provides in relevant part: "Judicial review by the superior court of a final administrative order may be had by filing a notice of appeal in accordance with the applicable rules of court governing appeals in civil matters."

observed that the Providence Medical Centers had been granted temporary rates in order to have time to respond to overdue state agency reports. Similarly, the superior court reasoned, North Star requested a temporary rate "while they awaited an overdue report from a federal agency contractor."

The superior court further reasoned that DHSS "committed error by refusing to set the Medicaid payment rates based on reasonable costs related to patient care, thereby setting North Star's Medicaid payment rate too low." The superior court noted that state and federal regulations also require the agency to follow Alaska's State Medicaid Plan,[9] which provides that "[f]acilities have the opportunity to provide additional information on significant changes that would impact the rates."

The superior court further noted that "although [DHSS] argues that they followed their regulation to the 'letter,' they did not do so in regard to [the Providence Medical Centers]" when they allowed the centers to submit additional information long after DHSS's internal deadlines had passed. The superior court concluded that since "being overdue [was] no fault of North Star," the audited 2006 report should have been considered and that "[b]y allowing such supplemental information to be submitted, the department would have been able to determine the most up-to-date assessment of the reasonable costs related to patient care." The superior court

remanded to the Office of Rate Review with instructions to use North Star's audited 2006 home office cost report to set North Star's base rate.

DHSS appeals.

## III. STANDARD OF REVIEW

■ When the superior court acts as an intermediate court of appeal, "we independently review the merits of the underlying administrative decision."[10] When reviewing an agency decision, we have "recognized four principal standards of review."[11] The first is the "'substantial evidence' test" used for questions of fact.[12] The second is the "'reasonable basis' test" used for questions of law involving agency expertise.[13] Third is the "'substitution of judgment' test" used for questions of law where no expertise is involved.[14] Finally, the "'reasonable and not arbitrary' test" is used for review of administrative regulations.[15]

## IV. DISCUSSION

In *State of Alaska, Department of Health & Social Services v. Valley Hospital Association, Inc.*, we addressed a similar question: whether DHSS's rate-setting for Medicaid reimbursement was arbitrary and capricious because it did not reflect the most recent cost data.[16] There, DHSS had established the Medicaid reimbursement rate based on data that was not current, applying a newly adopted rule that "in practical effect preclud-

9. *See* AS 47.07.040, which provides:

The department shall prepare a state plan in accordance with the provisions of 42 U.S.C. 1396–1396p (Title XIX, Social Security Act, Medical Assistance) and submit it for approval to the United States Department of Health and Human Services. The plan shall designate that the Department of Health and Social Services is the single state agency to administer this plan. The department shall act for the state in any negotiations relative to the submission and approval of the plan. The department may make those arrangements or regulatory changes, not inconsistent with law, as may be required under federal law to obtain and retain approval of the United States Department of Health and Human Services to secure for the state the optimum federal payment under the provisions of 42 U.S.C. 1396–1396p (Title XIX, Social Security Act, Medical Assistance).

*See also* 42 C.F.R. § 447.253(i) (2012): "The Medicaid agency must pay for inpatient hospital and long term care services using rates determined in accordance with methods and standards specified in an approved State plan."

10. *Usibelli Coal Mine, Inc. v. State, Dep't of Natural Res.*, 921 P.2d 1134, 1141 (Alaska 1996).

11. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992) (quoting *Jager v. State*, 537 P.2d 1100, 1107 n. 23 (Alaska 1975)).

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

16. 116 P.3d 580, 584–85 (Alaska 2005).

ed DHSS's consideration of up-to-date cost data, which would otherwise entitle Valley to a higher reimbursement rate."[17] Valley Hospital had filed an earlier Medicaid cost report, submitted as an interim cost report, which lacked certain current data due to its medical management computer software's lack of capacity.[18] Historically the inaccuracy of the interim cost report had not affected the annual rate determination because Valley Hospital would later provide to DHSS a more accurate printout of its actual Medicaid-eligible billings.[19] Because DHSS changed its regulation, so that its rate determination "would endure for four, rather than one, years," it determined that the interim report with less current data was the only data it would consider, even though more accurate data was available.[20] DHSS faulted Valley Hospital for filing an inaccurate Medicaid cost report, although DHSS made "no claim that the rate it set [was] in fact accurate, or superior in integrity to a rate established by accurate data."[21]

We held that DHSS acted arbitrarily and capriciously in setting the Medicaid reimbursement rate for Valley Hospital because "most importantly, at the time it calculated Valley's reimbursement rate, DHSS's Medicaid staff appeared to have known that there was a significant discrepancy between Valley's [submitted] log data and the [more accurate billings] report, and that using the log data would result in a lower reimbursement rate."[22] We took note of "some authority suggesting that adherence to a valid regula-

tion can be illegal when there are unusual circumstances that make such adherence highly unreasonable."[23] We also recognized authority, relied on by the superior court in that case, "that an agency [may act] arbitrarily and capriciously in refusing to correct an error in a facility's reimbursement data, even though the correction was apparently prohibited by the applicable regulations."[24] Because we were persuaded that Valley Hospital had "suffered a substantial injustice, offset by no compelling justification," we held that DHSS acted improperly in calculating the hospital's Medicaid reimbursement rate.[25]

DHSS argues that in the present case there are "good reasons to prefer audited data" and to "use a statement available before the new rate year begins." DHSS explains that an audited report is superior to an unaudited report, that DHSS cannot be responsible for auditing reports, and that DHSS staff needs at least 60 days to calculate rates. All of these assertions may be true. But regulations expressly permit the Office of Rate Review to grant a temporary rate, and DHSS concedes that any subsequent discrepancy between the temporary rate and the final rate will be adjusted, allowing for reimbursement of the overpayment or underpayment.[26] Thus, the Office of Rate Review could have granted a temporary rate and then adjusted the final rate based upon the audited 2006 home office cost report when it was returned by the fiscal intermediary in March.

17. *Id.* at 581.

18. *Id.* at 582.

19. *Id.*

20. *Id.* at 582.

21. *Id.* at 583.

22. *Id.* at 587.

23. *Id.* at 586.

24. *Id.* (citing *Beverly Enters. v. Miss. Div. of Medicaid*, 808 So.2d 939, 942–43 (Miss.2002)).

25. *Id.* at 587.

26. DHSS qualifies its concession by asserting that rerunning billings under a newly established

permanent rate is "a resource-intensive process that creates administrative and fiscal burdens." It also argues that "[i]f the provider has not properly budgeted [for the possibility of underpayment], it may cause serious problems to the provider" and "where the state underpays under a temporary rate, the department may have to seek additional funding from the legislature to make up a shortfall." But these reasons are insufficient to justify setting a rate, based on outdated data, which does not accurately reflect the reasonable costs related to patient care. Moreover, at the same time the Office of Rate Review denied North Star's request for a temporary rate, it granted temporary rates to Providence Alaska Medical Center and Providence Kodiak Island Medical Center, indicating that the administrative burdens are not insurmountable.

Moreover, using the audited 2006 home office cost report would allow DHSS to comply with AS 47.07.070(b)'s requirement that the department "set rates for facilities that are based on (1) reasonable costs related to patient care; and (2) audit and inspection results and reports, when the audit or inspection is conducted under AS 47.07.074." DHSS argues that it should not be required to conduct its own internal audit of the unaudited 2006 home office cost report, but that is not what North Star is suggesting. At the time the Office of Rate Review set North Star's rate, North Star had submitted its 2006 report to the federal auditor, fully expecting it to be returned in time for the rate review. The federal auditor delayed North Star's receipt of the audited report. Approving a temporary rate would have allowed time for receipt of the audited 2006 report and allowed the final rate to be set to reflect the hospital's "reasonable costs," as required by AS 47.07.070(b).

DHSS further notes that compliance with 7 AAC 150.170(b)(12)'s requirement that it use the data available 60 days before the rate year begins provides DHSS staff the time needed to calculate the rates for facilities. This, DHSS contends, allows the "prospective rate system" to work. In *City of Cordova v. Medicaid Rate Commission, Department of Health & Social Services,* we recognized that a prospective rate setting system was designed to save costs.[27] Facilities are paid at predetermined rates established every four years, predicated upon a base year that "provides an incentive for facilities to minimize their costs because a facility providing a service at a cost less than the pre-determined rate is permitted to keep the difference ..., while a facility providing the service at a cost greater than the pre-determined amount suffers a loss in the amount of the difference."[28] DHSS argues that a strict interpretation of the rule will preserve the integrity of the prospective system and ensure that rates are kept low because if "a facility were able to constantly adjust its rates based on any costs that it might incur during the course of a rate year,

there would be little incentive for that facility to operate in an efficient manner."

■ We understand that 7 AAC 150.170(b)(12)'s 60–day requirement is part of this prospective rate regime. But allowing the four-year prospective rate to be set based on the hospital's more recent 2006 cost data does not, as DHSS claims, undermine the purpose of the prospective rate system. DHSS has the discretion to grant temporary rates under 7 AAC 150.030(b), and in fact it granted temporary rates to both of the Providence Medical Centers, adjusting their final rates based on updated data in March 2008, the same month that the federal auditor completed North Star's audited 2006 home office cost report. And facilities still have an incentive to operate efficiently while under a temporary rate structure because it is uncontested that any discrepancy between the temporary rate and the permanent rate will be reimbursed to the damaged party.

Additionally, there is no reason to believe that applying the temporary rate in this case would create an exception that would devour the 60–day rule. Here, North Star had done everything necessary to provide the Office of Rate Review with the most up-to-date report, with the expectation that the federal auditor would complete the report in a timely fashion. North Star's conduct cannot be faulted because the failure to produce the audited 2006 home cost report on time was not something that North Star could control.

Finally, North Star is correct in its argument that AS 47.07.070 requires that the rate be based upon "reasonable costs related to patient care" and that the Alaska State Medicaid Plan allows for an adjustment of rates when "significant changes ... would impact the rates." The 2005 home office cost statement states North Star's costs were $613,056. The more recent 2006 home office cost statement states North Star's home office costs were a significantly higher $1,214,888. DHSS acknowledges that reliance on the 2006 audited report is "advantageous" to North Star because it would result in a higher reimbursement to North Star, which North Star estimates totals "hundreds

---

**27.** 789 P.2d 346, 348 (Alaska 1990).

**28.** *Id.*

of thousands of dollars." Such a discrepancy is by no means insignificant. We conclude there is no compelling reason to prefer the audited 2005 cost report to the audited 2006 report.

In summary, the present case and *Valley Hospital* are similar in a most important respect: At the time DHSS calculated both hospitals' reimbursement rates, DHSS's Medicaid staff appeared to have known that there was a significant discrepancy between the most current data available and the outdated data it relied on, and that using outdated data "would result in a lower reimbursement rate."[29] In this case, it was unreasonable for the Office of Rate Review to rely upon the 2005 home office cost report when North Star had submitted the more recent 2006 home office cost report, the audit of which had been delayed through no fault of North Star, and when an interim rate could have been set pending receipt of the audited 2006 report. Thus, DHSS abused its discretion when failing to consider the audited 2006 home office cost report.

## V. CONCLUSION

For these reasons, we AFFIRM the superior court's decision reversing DHSS's decision.

CHRISTEN, Justice, not participating.

---

**29.** *Valley Hosp.,* 116 P.3d at 587.