*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| THOMAS TITUS,<br><br>    Appellant,<br><br> v.<br><br>STATE OF ALASKA, DEPARTMENT OF ADMINISTRATION, DIVISION OF MOTOR VEHICLES,<br><br>    Appellee. | Supreme Court No. S-14177<br><br>Superior Court No. 4FA-09-01083 CI<br><br>O P I N I O N<br><br>[No. 6773 - April 12, 2013] |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Raymond Funk, Judge pro tem.

Appearances: Robert John, Law Office of Robert John, Fairbanks, for Appellant. Erling T. Johansen, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

WINFREE, Justice.

I.  INTRODUCTION

    A motorcyclist was involved in a single-vehicle accident resulting in a cut on his head and minor damage to his motorcycle. The accident involved no other

drivers, vehicles, or property. Because the motorcycle was not insured at the time of the accident, the State of Alaska, Department of Administration, Division of Motor Vehicles (DMV) suspended the driver's license. The motorcyclist appealed the suspension to the superior court, arguing that the suspension violated his equal protection and due process rights under the Alaska Constitution and was precluded by the *de minimis* nature of the accident. The superior court rejected the motorcyclist's arguments and awarded attorney's fees to DMV. The motorcyclist appeals, raising the same substantive arguments and challenging the award of attorney's fees.

We conclude that the motorcyclist's constitutional and common law arguments do not compel reversal of the administrative suspension. However, we vacate the entry of attorney's fees and remand to the superior court to determine how the motorcyclist's constitutional challenges should impact the award.

## II. FACTS AND PROCEEDINGS

### A. Facts

In May 2008 Thomas Titus was riding his motorcycle with a group of riders. As the riders turned onto a main expressway from a side street, Titus looked back to make sure that others had made the turn. When Titus looked forward, he noticed the surrounding traffic was slowing down. He applied his brakes and his motorcycle fishtailed. Titus, who was not wearing a helmet, fell to the ground and his head hit the pavement. Only Titus was injured and only Titus's motorcycle was damaged; the accident involved no other drivers, vehicles, or property.

Titus was transported by ambulance to the local hospital. Titus suffered only a cut on his head, which the doctor sealed with four staples. Titus suffered no lasting injury and the cost of his treatment was paid through his health care coverage.

The accident bent the handlebar of Titus's motorcycle and scratched the exhaust pipe. Titus asserted that he could have bent the handlebar back into place

himself, but chose to order and personally install a new one. Estimating the value of his labor at $20 an hour, Titus asserted the total value of the parts and labor required to repair the motorcycle was $216.95.

Titus told the responding officer that he had insurance coverage and later testified that he "thought for sure that [the motorcycle] was insured." But after the accident he called his insurance company and was told that although his wife's motorcycle recently had been added to their coverage, Titus's motorcycle had not. Titus asserted he "just didn't understand that, because [he had] been pretty good with [his] insurance, and [had] always paid everything on time."

Titus's motorcycle had been insured from 2004 to 2007; he removed the coverage at the end of the 2007 riding season. In 2008, about two weeks before the accident, the Tituses switched insurance companies. Titus's wife testified that she had called the new insurance company and added her motorcycle to the insurance plan; she attempted to add Titus's motorcycle to the plan but she could not find the vehicle identification number (VIN) for it. Titus had been out of town for work at the time, and when he returned home for a few days she told him in passing that he "needed to get his VIN number and to call in his bike to be insured." She asserted that she thought Titus "knew we needed to call the insurance company to supply the VIN but [she] also believe[d] he thought [she] had insured the bike."

Titus testified that he had to leave town shortly after the accident, did not have the opportunity to repair or ride the motorcycle during the following summer, and did not re-insure it.

B.    Proceedings

1.    Administrative hearing

Approximately three months after the accident, DMV informed Titus that his driver's license would be suspended for 90 days for failing to comply with proof-of-

insurance laws.[1] DMV explained that it pursued suspension because Titus's vehicle was uninsured during a "collision which resulted in injury, death, or property damage . . . exceeding $501.00," and because the "exceptions provided by Alaska Statute 28.22.041(h) do not apply."[2]

Titus holds a class A commercial driver's license and drives commercial and heavy equipment trucks; he asserted that if his license were suspended, he would be

---

[1]     AS 28.22.021 provides:

> The owner or operator of a motor vehicle required to have motor vehicle liability insurance that complies with this chapter or a certificate of self-insurance that complies with AS 28.20.400, shall show proof of this insurance when that person is involved in an accident that results in bodily injury to or death of a person, or damage to the property of a person exceeding $501.

Under AS 28.22.041, "if a person fails to provide proof required under AS 28.22.021 . . . the department shall suspend the driver's license of that person for . . . not less than 90 days . . . ."

[2]     AS 28.22.041(h) provides that a license will not be suspended if the person

> (1) is involved in an accident that results in property damage of less than $2,000 and the damage occurs only to the property of the person required to show proof of insurance;

> (2) not later than 15 days after the accident, provides proof of motor vehicle liability insurance that complies with this chapter or a certificate of self-insurance that complies with AS 28.20.400 to the department; and

> (3) establishes by a preponderance of the evidence that the failure to have in effect motor vehicle liability insurance or to self-insure as required by this chapter at the time of the accident was due to circumstances beyond the control of the person.

unable to work. Titus requested an administrative hearing, asserting that his livelihood depended upon his commercial driver's license and that he had been consistently insured in the past.

Appearing telephonically before a DMV hearing officer, Titus raised three main arguments. First, Titus argued that his accident did not require proof of insurance under AS 28.22.021 because the statute's $501 threshold applies to both bodily injury and property damage, which combined did not cost him more than $501 to remedy. Second, Titus argued that his health coverage satisfied the statute's insurance requirement because it paid for the actual physical injury caused by the accident. Third, Titus argued that DMV should recognize a *de minimis* exception because minimal harm to the driver was "not the sort of situation that the law was intended to protect against and prevent."

The hearing officer found that Titus was involved in an accident without carrying liability insurance. The hearing officer accepted that the damage to the motorcycle was under $501, but concluded that the $501 threshold applied only to property damage — it did not matter if the bodily injury was treated for less than $501. The hearing officer rejected Titus's *de minimis* theory, but explained that even if it applied, Titus's injury was not *de minimis*. Finally, the hearing officer found Titus did not qualify for an exemption under AS 28.22.041(h). Though she found the first element for the exemption (property damage less than $2,000) was satisfied, she found the second (proof of insurance within 15 days) and third (lack of insurance caused by circumstances beyond driver's control) were not met. The hearing officer suspended Titus's license for 90 days.

### 2.    Appeal to the superior court

Titus appealed to the superior court. Titus argued that the suspension violated the Alaska Constitution's guarantees of equal protection, substantive due

process, and procedural due process, and that DMV erred in rejecting the *de minimis* theory. Both Titus and DMV requested oral argument, but DMV subsequently moved to withdraw its request. The superior court issued a decision without oral argument, and then granted as moot DMV's motion to withdraw its request. The superior court rejected Titus's constitutional arguments and concluded a *de minimis* exception was legally and factually inapplicable. The court upheld DMV's decision and ordered the suspension.

DMV moved for $5,922 in attorney's fees, 30% of the fees DMV asserted it incurred. Titus challenged the reasonableness of DMV's attorney's logged hours and also argued that AS 09.60.010(c)(2)[3] precluded the award because he had raised constitutional challenges that were neither frivolous nor economically motivated. The superior court rejected Titus's arguments without comment and awarded DMV $5,922.

Titus appeals. He raises the same constitutional and *de minimis* arguments made to the superior court, challenges the superior court's entry of a decision without the requested oral argument, and disputes the award of attorney's fees.

## III. STANDARD OF REVIEW

"When a superior court acts as an intermediate court of appeals, we

---

[3] AS 09.60.010(c) provides:

In a civil action or appeal concerning the establishment, protection, or enforcement of a right under . . . the Constitution of the State of Alaska, the court

. . . .

(2) may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant . . . did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.

independently review the administrative decision."[4] We "use the substantial evidence test to review an agency's factual findings. Substantial evidence to support an agency's findings exists when there is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion."[5] We review questions of law involving agency expertise under the reasonable basis test and where no expertise is involved under the substitution of judgment test.[6] Questions of law where no expertise is involved encompass questions such as "statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience."[7] "The substitution of judgment test is equivalent to de novo review and requires that we adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[8] "Constitutional issues are questions of law subject to independent review."[9]

---

[4] *Alaska Exch. Carriers Ass'n, Inc. v. Regulatory Comm'n of Alaska*, 202 P.3d 458, 460 (Alaska 2009).

[5] *Lightle v. State, Real Estate Comm'n*, 146 P.3d 980, 982 (Alaska 2006) (quoting *Yoon v. Alaska Real Estate Comm'n*, 17 P.3d 779, 782 (Alaska 2001)) (internal quotation marks omitted).

[6] *State, Dep't of Health & Soc. Servs. v. N. Star Hosp.*, 280 P.3d 575, 579 (Alaska 2012) (citing *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992)).

[7] *Samissa Anchorage, Inc. v. State, Dep't of Health & Soc. Servs.*, 57 P.3d 676, 678 (Alaska 2002) (quoting *Justice v. RMH Aero Logging, Inc.*, 42 P.3d 549, 552 (Alaska 2002)) (internal quotation marks omitted).

[8] *Oels v. Anchorage Police Dep't, Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012) (quoting *Kingik v. State, Dep't of Admin., Div. of Ret. & Benefits*, 239 P.3d 1243, 1248 (Alaska 2010)) (internal quotation marks omitted) (citing *Griswold v. City of Homer*, 252 P.3d 1020, 1025 n.6 (Alaska 2011)).

[9] *Ross v. State, Dep't of Revenue*, 292 P.3d 906, 909 (Alaska 2012) (quoting (continued...)

We review an award of attorney's fees for abuse of discretion, which "exists if an award is arbitrary, capricious, manifestly unreasonable, or improperly motivated."[10] However, whether the superior court correctly applied the law allowing or prohibiting an award is a question of law reviewed de novo.[11]

## IV. DISCUSSION

### A. The Suspension Did Not Violate Equal Protection.

Titus argues that suspending his driver's license under AS 28.22.021 and AS 28.22.041 violated the equal protection clause of the Alaska Constitution.[12] Under the proof-of-insurance statutes, DMV must suspend a driver's license if the driver failed to provide proof of insurance after an accident "result[ing] in bodily injury to or death of a person, or damage to the property of a person exceeding $501."[13] Titus asserts this discriminates against drivers who are involved in accidents that injure only the driver or the driver's property, but cause no harm to others.

"The constitutional right to equal protection is a command to state and local governments to treat those who are similarly situated alike. The common question in equal protection cases is whether two groups of people who are treated differently are

---

[9] (...continued)
*Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 995 (Alaska 2011)).

[10] *Okagawa v. Yaple*, 234 P.3d 1278, 1280 (Alaska 2010) (quoting *Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.*, 116 P.3d 592, 597 (Alaska 2005)) (internal quotation marks omitted).

[11] *Id.* (quoting *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 252 (Alaska 2009)).

[12] Alaska Const. art. I, § 1 ("[A]ll persons are equal and entitled to equal rights, opportunities, and protection under the law.").

[13] AS 28.22.021 (proof of insurance); AS 28.22.041 (suspension).

similarly situated and thus entitled to equal treatment."[14] DMV argues there is no equal protection issue because the proof-of-insurance statutes treat similarly situated persons alike by requiring all drivers to carry insurance. But DMV's perspective is too broad. Here, similarly situated *uninsured* motorists are treated differently. Alaska Statute 28.22.021 bases the proof-of-insurance requirement, and ultimately suspension, on the results of a motor vehicle accident: If an uninsured motorist is in an accident causing death, bodily injury, or over $501 in property damage, DMV must suspend the motorist's license, but an uninsured motorist involved in an accident not causing one of those enumerated results does not face license suspension. In requiring proof of insurance and suspension for some, but not all, uninsured motorists, the statutes treat similarly situated persons differently. We ordinarily review different legal treatment under the equal protection clause.[15]

We apply a flexible sliding-scale analysis to state equal protection claims.[16] This involves a three-step process under which we "determine[] the weight of the individual interest at stake, the importance of the government's interest, and the closeness of the fit between the statute and the government's objective."[17] The requisite government interest and tailoring depend on the nature of the impaired interest. Individual interests that are not recognized as important require the statute to bear a fair

---

[14] *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994).

[15] *Id.* at 396.

[16] *Ross v. State, Dep't of Revenue*, 292 P.3d 906, 909 (Alaska 2012) (quoting *Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 1001 (Alaska 2011)).

[17] *Schiel v. Union Oil Co. of Calif.*, 219 P.3d 1025, 1030 (Alaska 2009) (citing *Glover v. State, Dep't of Transp., Alaska Marine Highway Sys.*, 175 P.3d 1240, 1256 (Alaska 2008)).

and substantial relationship to a legitimate state interest.[18] Important individual interests require the statute to have a close relationship to an important state interest.[19] The most important individual interests require the statute to be the least restrictive means to further a compelling state interest.[20]

Titus asserts he has an important interest in his driver's license and the right to drive. We agree. In *Whitesides v. State, Department of Public Safety*, a case involving a procedural due process challenge, we held that a driver's license is an important property interest.[21] Our reasoning in *Whitesides* remains persuasive in the equal protection context.[22] Because the proof-of-insurance statutes impact an important individual interest, they must bear a close relationship to an important state interest.

The state interest in the proof-of-insurance statutes is set out in the legislature's declaration of purpose:

> The legislature determines that it is a matter of grave concern that motorists be financially responsible for their negligent acts so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted

---

[18]     *Id.*; *see also Glover*, 175 P.3d at 1258 (examining "fair and substantial" relationship between statute and state objective when only individual economic interest impacted).

[19]     *Schiel*, 219 P.3d at 1030 (citing *Malabed v. N. Slope Borough*, 70 P.3d 416, 421 (Alaska 2003)).

[20]     *Id.* (citing *C.J. v. State, Dep't of Corr.*, 151 P.3d 373, 378 (Alaska 2006)).

[21]     20 P.3d 1130, 1135 (Alaska 2001) (citing *Champion v. Dep't of Pub. Safety*, 721 P.2d 131, 133 (Alaska 1986); *Berlinghieri v. Dep't of Motor Vehicles*, 657 P.2d 383, 387-88 (Cal. 1983)).

[22]     *See Valentine v. State*, 155 P.3d 331, 347 (Alaska App. 2007) (noting, in equal protection context, that right to drive is an important interest), *rev'd on other grounds*, 215 P.3d 319 (Alaska 2009).

upon them. The legislature finds and declares that the public interest can best be served by the requirements that the operator of a motor vehicle involved in an accident respond for damages and show proof of financial ability to respond for damages in future accidents as a prerequisite to the person's exercise of the privilege of operating a motor vehicle in the state.[23]

The State has an important interest in protecting the public from uninsured motorists. Titus does not dispute the State's interest, but argues the interest in protecting the public is not furthered by requiring proof of insurance after single-vehicle accidents. He concedes it is logical to suspend an uninsured driver's license after an accident harming others,[24] but argues suspension makes little sense in a single-vehicle accident because the statutorily required insurance would not cover the damages. We are not persuaded.

As indicated in the legislature's declaration of purpose, the proof-of-insurance statutes are designed to discover and deter uninsured driving and require "proof of financial ability to respond for damages in future accidents."[25] Because the purpose is forward-looking, it is irrelevant whether liability insurance would apply to the accident triggering the proof-of-insurance requirement. The public is protected by encouraging uninsured motorists to carry insurance in the future, and this is furthered by requiring proof of insurance after an accident, even if it is a single-vehicle accident, and by suspending a driver's license if the vehicle is uninsured.

---

[23]     AS 28.20.010.

[24]     *See, e.g.*, *State, Dep't of Public Safety, Div. of Motor Vehicles v. Fernandes*, 946 P.2d 1259, 1259 (Alaska 1997) (affirming suspension where driver "did not have automobile liability insurance when he caused substantial property damage while operating his vehicle").

[25]     AS 28.20.010.

The question remains whether there is a sufficient nexus between protecting the public and the distinction drawn in the proof-of-insurance statutes in which some, but not all, uninsured motorists may face suspension. In drafting the proof-of-insurance statutes, the legislature established different sanctions for different circumstances. The gravity of the sanctions roughly follow the gravity of the circumstances. On the minor side, an uninsured driver involved in an accident with minimal harm (property damage under $501 and neither bodily injury nor death) is not required to show proof of insurance and therefore will not face suspension.[26] On the severe side, an uninsured driver involved in an accident with serious harm (property damage over $501, bodily injury, or death) must show proof of insurance and may face a 90-day license suspension.[27] And under any circumstances, an uninsured driver may face an infraction and a fine if the driver cannot show proof of insurance upon a peace officer's request.[28]

While the provisions may not precisely fit every situation, determining which triggering events implicate public safety and warrant sanctions is the province of the legislature, and as long as the lines drawn bear a close fit to the state interest in preventing uninsured driving, the statutory scheme survives equal protection scrutiny. Tying an uninsured driving suspension to the accident's gravity bears a constitutionally adequate nexus to the state interest. We therefore conclude that the distinctions at issue here do not violate the Alaska Constitution's guarantee of equal protection.

B.     The Suspension Did Not Violate Due Process.

Titus argues the proof-of-insurance statutes violate the Alaska

---

[26]     AS 28.22.021; AS 28.22.041.

[27]     AS 28.22.021; AS 28.22.041.

[28]     AS 28.22.019.

Constitution's due process guarantee.[29]  Titus asserts the license suspension was not based on a finding of unfitness to drive and was therefore not a remedial administrative action.  Rather, he argues it was a criminal sanction entitling him to safeguards of criminal due process, including proof of criminal intent.  Titus also argues that even if the suspension were remedial, due process requires that he have an opportunity to remedy his noncompliance before his driver's license is suspended.

### 1.    Criminal due process is not required here.

Titus argues that for a remedial administrative suspension to satisfy due process, the suspension must be premised on the driver's unfitness to drive.  He contends that absent a direct connection to fitness to drive, a suspension is not a remedial administrative action, but a criminal sanction.  He asserts that because his suspension was based on inadvertent noncompliance, not on unfitness to drive, the suspension was a punitive criminal sanction requiring criminal due process and proof of criminal intent.

Titus's argument is based on our procedural due process analysis in *State v. Niedermeyer*.[30]  There, a minor's driver's license was revoked after the minor was arrested for underage drinking, even though there was no allegation that the minor had driven or intended to drive.[31]  The minor challenged the revocation as a violation of procedural due process, arguing it was a criminal sanction imposed without adequate process.[32]  We explained that an agency revocation of a driver's license can be either a

---

[29]    Alaska Const. art. I, § 7 ("No person shall be deprived of life, liberty, or property, without due process of law.  The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.").

[30]    14 P.3d 264, 268-70 (Alaska 2000).

[31]    *Id.* at 266, 270.

[32]    *Id.* at 268-69.

criminal sanction or an administrative measure.[33] If the revocation is based solely on a criminal offense, then it is a criminal sanction, but if the revocation is based on conduct demonstrating unfitness to drive, it is a remedial administrative measure.[34] Because there was not a direct connection between a minor's consumption or possession of alcohol and the minor's fitness to drive, the revocation was not a remedial action, but a criminal sanction requiring criminal due process.[35]

Unlike underage drinking or possession of alcohol, failure to carry liability insurance is related to a person's fitness to drive. The purpose of the proof-of-insurance statutes is to ensure that drivers are financially responsible and can "show proof of financial ability to respond for damages in future accidents."[36] Suspending a driver's license for failure to show proof of insurance enforces that degree of financial responsibility that the legislature has required of drivers. Because the suspension is directly related to unfitness to drive, it is a remedial action. The punitive and deterrent effects of the administrative suspension do not negate the suspension's remedial nature.[37]

---

[33] *Id.* at 269.

[34] *Id.* (citing *Baker v. City of Fairbanks*, 471 P.2d 386, 402 n.28 (Alaska 1970)).

[35] *Id.* at 270.

[36] AS 28.20.010.

[37] *See Niedermeyer*, 14 P.3d at 270 (citing *State v. Zerkel*, 900 P.2d 744, 755-58 (Alaska App. 1995)); *Baker*, 471 P.2d at 402 & n.28 (noting administrative revocation or suspension of license where "basis . . . is not that one has committed a criminal offense, but that the individual is not fit to be licensed," are not criminal prosecutions).

Therefore Titus was not entitled to criminal due process and proof of criminal intent.[38]

### 2. Due process does not require that Titus have an opportunity to remedy.

Titus argues that if the suspension were remedial in nature, then due process requires that he be given an opportunity to remedy his noncompliance prior to suspending his license. Titus reasons that because a driver's license is an important property interest, it would be fundamentally unfair to deprive him of that interest without first alerting him of his noncompliance and providing him a reasonable time to remedy it.

We apply the *Mathews v. Eldridge*[39] framework to determine if a government action satisfies due process.[40] "We consider (1) the private interest that the official action affects, (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional safeguards, and (3) the government's interest, including fiscal and administrative burdens, in implementing additional safeguards."[41] As to the first factor, Titus has an important property interest in his driver's license.[42] As to the second factor, the absence of a right to remedy

---

[38] Titus also briefly argues that the license suspension violates equal protection because there is not a direct connection to unfitness to drive. Because we conclude that the suspension for failure to show proof of insurance is directly related to unfitness to drive, we reject Titus's additional equal protection argument.

[39] 424 U.S. 319, 339-49 (1976).

[40] *Alvarez v. State, Dep't of Admin., Div. of Motor Vehicles*, 249 P.3d 286, 292 (Alaska 2011) (citing *Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1134-35 (Alaska 2001)).

[41] *Id.*

[42] *Id.*

noncompliance does not increase the risk of an erroneous deprivation. As to the third factor, a right to remedy noncompliance under Titus's circumstances would frustrate the government interest in heightening awareness of insurance requirements and deterring drivers from future failure to carry liability insurance.[43] The legislature contemplated that some drivers may find themselves uninsured by no fault of their own and exempted those drivers if they meet certain criteria.[44] However where the failure to carry insurance was not beyond the driver's control, allowing the driver to avoid suspension by purchasing insurance after an accident would promote laxity where the legislature desired awareness. Because a right to remedy undermines the government interest in deterring future uninsured driving and because the absence of a right to remedy does not increase the risk of an erroneous deprivation, we conclude that due process does not require that procedure.

In further support of his argument that due process requires a right to remedy, Titus cites to *Balough v. Fairbanks North Star Borough*.[45] But *Balough* does not stand for the proposition that due process requires an opportunity to remedy any inadvertent noncompliance in order to avoid deprivation of a significant property interest. There, a landowner worked with the borough in an attempt to bring her

---

[43]    *See* AS 28.20.010 (declaring that public interest is best served by requiring drivers involved in accidents to "show proof of financial ability to respond for damages in *future accidents*") (emphasis added).

[44]    AS 28.22.041(h) (exempting uninsured driver from suspension if accident caused less than $2,000 in damages and only to driver's property, driver provides proof of insurance within 15 days of the accident, and driver establishes that failure to carry insurance was beyond the driver's control).

[45]    995 P.2d 245, 263 (Alaska 2000).

junkyard into compliance with a fencing ordinance.[46] Because of noncompliance with the ordinance, the landowner was denied grandfather rights when the land was rezoned.[47] We explained that under the ordinance, noncompliance did not automatically make the junkyard unlawful, but instead required that it be brought into compliance.[48] Because the landowner was attempting to bring the junkyard into compliance and because it was not until the rezoning that the landowner learned her attempt fell short, we concluded due process required the landowner have an opportunity to remedy the deficiencies in her attempted compliance.[49]

Titus asserts that his "inadvertent noncompliance was capable of being remedied [and] would have [been] remedied had Titus been given the option to do so." But unlike the landowner in *Balough*, Titus was not working with a regulatory entity to come into compliance with the law, he merely thought that his motorcycle was insured when it was not. Further, the fencing ordinance is distinguishable from the proof-of-insurance statutes. We explained in *Balough* that  noncompliance with the fencing ordinance "does not automatically lead to the conclusion that [the landowner's] junkyard was unlawful and hence not entitled to [grandfather rights]"; it was therefore appropriate to contemplate the immediate prospect of compliance.[50] In contrast, failure to carry liability insurance during an accident causing bodily injury automatically triggers a

---

[46]     *Id*. at 248-49.

[47]     *Id*. at 249-52.

[48]     *Id*. at 259.

[49]     *Id*. at 263.

[50]     *Id*. at 259.

license suspension.[51]  Aside from a limited exemption for drivers whose failure to carry insurance was beyond their control and a provision for a limited license for medical or work needs — neither of which are at issue in Titus's due process claim — the relevant proof-of-insurance statutes do not contemplate the prospect of immediate compliance with insurance requirements.[52]  Our reasoning in *Balough* does not apply here.

## C.  A Common Law *De Minimis* Exception Is Inapplicable.

Titus next argues that DMV's hearing officer erred in declining to apply a *de minimis* exception.  Whether to recognize this common law defense requires an analysis of the proof-of-insurance statutes and the common law.  Titus therefore raises a legal question not requiring the expertise of DMV, to which we apply our independent judgment.[53]

Titus asserts there is no statute pertaining to a *de minimis* exception to the proof-of-insurance requirements and, in the absence of a statute, this court has the authority to declare common law.  As the basis of his *de minimis* theory, Titus cites to an annotation discussing the defense in criminal prosecutions.[54]  There, *de minimis* is discussed as a defense available when "the violation of the law in question was so trivial

---

[51]  AS 28.22.021; AS 28.22.041(a).

[52]  AS 28.22.021; AS 28.22.041.

[53]  *See Samissa Anchorage, Inc. v. State, Dep't of Health & Soc. Servs.*, 57 P.3d 676, 678 (Alaska 2002) ("We apply the substitution of judgment test to legal questions where no agency expertise is involved . . . ."); *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.*, 516 P.2d 408, 412 (Alaska 1973) ("Courts are the experts in such areas as . . . common law, . . . judgemade law developed through statutory interpretation, . . . and problems transcending the agency's field . . . ." (quoting 4 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 30.14, at 269 (1958))).

[54]  Brent G. Filbert, Annotation, *Defense of Inconsequential or De Minimis Violation in Criminal Prosecution*, 68 A.L.R. 5th 299 (1999).

or so far afield from the harm imagined by the legislature that the defendant should not be held criminally culpable."[55]

DMV's hearing officer considered whether Titus's violation was in fact *de minimis*. The hearing officer concluded that Titus's injuries would not qualify for a *de minimis* exception because they required ambulance transportation and several staples to the head. Titus argues, however, that the hearing officer "refused to consider the [*de minimis*] doctrine as a defense." He asserts that in order to analyze the *de minimis* defense, the hearing officer was required to look at evidence of Titus's good faith, character, and experience.[56] Titus thus raises the issue of whether we must recognize and define a *de minimis* exception to the proof-of-insurance statutes.

We have authority to apply common law doctrines "in the absence of a statute directing a contrary rule."[57] But in AS 28.22.041(h), the legislature crafted a three-part test to define circumstances in which a violation of the proof-of-insurance statutes would be inconsequential and provided a mechanism to consider the harm and the driver's culpability. The legislature exempted violations if a driver is involved in an accident causing property damage less than $2,000 only to the driver, provided proof of insurance within 15 days of the accident, and established that the failure to provide

---

[55]     *Id.* at 308.

[56]     *See id.* at 299 ("In determining whether to apply the doctrine courts have looked to such factors as the defendant's experience and character . . . .").

[57]     *Bauman v. Day*, 892 P.2d 817, 828 (Alaska 1995) (applying common law discovery rule to contract case); *see also Hosier v. State*, 957 P.2d 1360, 1363 (Alaska App. 1998) ("[I]n the absence of a governing statute or constitutional provision, the judiciary retains the power to declare the common law . . . .").

insurance was beyond the driver's control.[58]  Because a statute defines minimal violations to the proof-of-insurance statutes, we decline to adopt a common law *de minimis* exception in this instance.

> **D.  Titus's Constitutional Claims May Impact The Attorney's Fees Calculation.**

Pursuant to Alaska Rules of Appellate Procedure 508(e)[59] and 601(c),[60] DMV moved for $5,922 in attorney's fees, 30% of the fees it asserted it incurred in the superior court proceedings.  Titus opposed, arguing that DMV's attorney billed an excessive number of hours and that Titus's constitutional challenges precluded an award of attorney's fees under AS 09.60.010(c).[61]  The superior court awarded DMV the

---

[58]    AS 28.22.041(h).

[59]    Alaska R. App. P. 508(e) provides "Attorney's fees may be allowed in an amount to be determined by the court."

[60]    Alaska R. App. P. 601(c) provides that procedures not addressed in the rules governing appeals to the superior court are governed by the general provisions of the Rules of Appellate Procedure.

[61]    AS 09.60.010(c) provides:

> In a civil action or appeal concerning the establishment, protection, or enforcement of a right under . . . the Constitution of the State of Alaska, the court
>
>      . . . .
>
> (2) may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant . . . did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.

requested $5,922 without addressing either of Titus's arguments.

Titus reiterates his argument that DMV's attorney billed an excessive number of hours — 98.7 hours compared to Titus's counsel's 51.9 hours — and that entering attorney's fees based on those hours is an abuse of discretion. The amount of attorney's fees to award under Rule 508(e) is "a matter committed to the sound discretion of [the] trial courts, when sitting as intermediate appellate tribunals."[62] We will not overturn an award unless it is "manifestly unreasonable."[63] Titus argues that reasonable hours for DMV's defense would be between approximately 25 and 40 hours; that is, between the hours spent on Titus's opening brief and the time spent on both his opening and reply briefs. Aside from comparing the attorneys' reported hours, Titus raises no particularized challenges to DMV's billing statement or DMV's attorney's affidavit. In awarding fees based on DMV's reported hours, the superior court could properly have looked to the billing statement and the assertion in DMV's attorney's affidavit that the hours were "actually and necessarily expended in the development of [DMV's] defense." The record does not indicate that the superior court based the award on excessive or unreasonable hours; therefore there was no abuse of discretion on those grounds.

Titus also asserts it was legal error not to apply AS 09.60.010(c). The application of a statute governing attorney's fees is not committed to the superior court's discretion, but is a question of law reviewed de novo.[64] DMV did not attempt to rebut Titus's statutory argument before the superior court, and the superior court did not

---

[62]     *Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478, 482 (Alaska 1984).

[63]     *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1038 (Alaska 2005) (quoting *D.H. Blattner & Sons, Inc. v. N.M. Rothschild & Sons, Ltd.*, 55 P.3d 37, 56 (Alaska 2002)).

[64]     *Okagawa v. Yaple*, 234 P.3d 1278, 1280 (Alaska 2010).

discuss AS 09.60.010(c) in its award of attorney's fees. DMV avoids the issue in its briefing to us.

Alaska Statute 09.60.010(c) precludes an adverse attorney's fees award where a claimant asserts non-frivolous constitutional claims without sufficient economic interest to bring the action or appeal otherwise.[65] And even if a constitutional claimant does not qualify for protection under AS 09.60.010(c), the claimant may seek abatement of an adverse attorney's fee award under AS 09.60.010(e). Titus asserted that the proof-of-insurance statutes violated his constitutional rights to equal protection and due process; his only claim that was not constitutionally based was his assertion that a *de minimis* exception applied.[66] It was error not to consider Titus's AS 09.60.010 arguments.

We therefore vacate the attorney's fee award and remand to the superior court for renewed consideration of the issue, taking into account Titus's reliance on AS 09.60.010.

E.     **Failure To Hold Oral Argument Was Error.**

The parties agree that it was error for the superior court to issue a decision without first holding the requested oral argument,[67] but also agree that the error is harmless in light of our independent review of the administrative decision and the

---

[65]     AS 09.60.010(c). *See Tracy v. State, Dep't of Health & Soc. Servs.,Office of Children Servs.*, 279 P.3d 613, 619 (Alaska 2012) (vacating attorney's fee award on unsuccessful constitutional claims).

[66]     *Cf. Lentine v. State*, 282 P.3d 369, 381 (Alaska 2012) (affirming attorney's fees award where, in contrast to Titus, claimant raised constitutional claims only tangentially and in passing).

[67]     Alaska R. App. P. 605.5(b) (in appeals, other than civil cases concerning less than $300 or minor offenses, "oral argument will be scheduled automatically if timely requested by either party").

opportunity for oral argument before us. Because the parties agree the error was harmless, there is no need to remand on that ground.[68] We note, however, that should we need to address a pattern of disregard for procedural rules, we may "devise necessary remedial steps in each case under [our] supervisory power to protect the rights of litigants."[69]

## V.    CONCLUSION

For the foregoing reasons we AFFIRM the administrative suspension of Titus's driver's license, VACATE the award of attorney's fees, and REMAND for a new attorney's fees determination.

---

[68]    *See* Alaska R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

[69]    *McCracken v. Davis*, 560 P.2d 771, 774 (Alaska 1977) (citations omitted).