*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska, 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DEBORAH HARRIS, | ) | |
| | ) | Supreme Court No. S-15230 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| | ) | Appeals Commission No. 13-005 |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| MILLENNIUM HOTEL and NEW | ) | No. 6927 – July 25, 2014 |
| HAMPSHIRE INSURANCE CO., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commission Chair.

Appearances: Eric Croft, The Croft Law Office, Anchorage, and Peter Renn, Lambda Legal Defense and Education Fund, Inc., Los Angeles, California, for Appellant. Donald C. Thomas and Kendra E. Bowman, Delaney Wiles, Inc., Anchorage, for Appellees. Sonja Redmond, Law Office of Sonja Redmond, Soldotna, and Kellie M. Fiedorek, Alliance Defending Freedom, Washington, D.C., for Amicus Curiae Alaska Family Action.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

The Alaska Workers' Compensation Board denied a death benefit claim filed by the decedent's same-sex partner because the death benefit statute grants benefits only to a worker's "widow or widower" as defined by statute. The Board construed these terms by applying the Marriage Amendment to the Alaska Constitution, which defines marriage as "only between one man and one woman," thus excluding a decedent's same-sex partner. Because this exclusion lacks a fair and substantial relationship to the purpose of the statute, we conclude that this restriction on the statutory definition of "widow" violates the surviving partner's right to equal protection under the law.

## II.    FACTS AND PROCEEDINGS

Kerry Fadely, a manager at the Millennium Hotel, was shot and killed at work in October 2011. Millennium agreed that the death occurred in the course and scope of Fadely's employment. Deborah Harris filed a workers' compensation claim for death benefits in March 2012 as Fadely's "dependant/spouse." Millennium filed an answer and notice of controversion denying benefits because it "ha[d] not received any documentation" that Harris was Fadely's wife or husband. Relying on *Ranney v. Whitewater Engineering*,[1] it also controverted benefits based on Harris's status as an "unmarried co-habitant."

Harris filed notice that she was challenging the constitutionality of the statutory provisions of the Alaska Workers' Compensation Act that limit eligibility for death benefits to widows or widowers. Harris said she was the "surviving same-sex partner" of Fadely and noted that they were "precluded from marrying each other under Alaska law." Harris asked the Board to issue a final decision so that she could appeal the

---

[1]    122 P.3d 214 (Alaska 2005).

constitutional issue, given that the Board lacked the authority to determine whether the statute violated her equal protection rights. She attached documentary evidence as well as several affidavits to support her factual assertions and "preserve[] any factual context for later judicial review."

In Harris's affidavit, she described her relationship with Fadely as "an exclusive, committed, and financially interdependent relationship" that had spanned more than 10 years. For most of those years, the couple lived in Alaska. She said that she and Fadely had exchanged rings in 2005 and referred to each other as spouses or partners. Harris also stated that she and Fadely had joint credit cards and shared responsibility for household expenses, that they had raised their children from prior relationships together, and that they would have married if they had been able to. Harris attached an affidavit of domestic partnership that she and Fadely had completed in 2008 for another employer; completing the affidavit permitted Harris to be enrolled in Fadely's employer's medical and dental plans. In the affidavit, they attested that they met the requirements of domestic partnership as listed in the document as of June 1, 2002.

The parties submitted stipulated facts to the Board and asked the Board to make a decision without an oral hearing. Millennium acknowledged that Fadely's death was compensable, but it disputed Harris's claim that she and Fadely were "in a same-sex relationship that could justify a conferral of rights or benefits" and noted that the two were "not married to one another as required under the [Alaska Workers' Compensation] Act and as defined under Alaska law." The parties agreed that the Board did not need to consider Harris's evidence to decide her claim and also agreed that the Board lacked the authority to decide constitutional questions.

The Board decided that Harris was not entitled to benefits because at the time of Fadely's death "[Harris] and [Fadely] were not, and could not be married to one

another in Alaska." The Board declined to address Harris's constitutional arguments because it lacked jurisdiction to do so.

Harris appealed to the Alaska Workers' Compensation Appeals Commission, again asserting her constitutional claim but acknowledging that the Commission did not have jurisdiction to declare a statute unconstitutional. The Commission agreed it lacked jurisdiction to resolve the constitutional question, but it affirmed the Board's decision that Harris was not entitled to death benefits because she did not qualify as a widow or widower as defined in the Alaska Workers' Compensation Act. The Commission also noted that *Ranney* precluded an award of benefits to unmarried cohabitants of deceased employees.

Harris appeals the Commission's decision to this court.

## III.   STANDARD OF REVIEW

We apply our independent judgment when we interpret constitutional provisions and statutes.[2] Statutes are presumed to be constitutional, and the person challenging a statute's constitutionality has the burden of showing that the statute is unconstitutional.[3] An equal protection challenge involves resolution of several questions, most of which are questions of law.[4] We apply our independent judgment to questions of law, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[5]

---

[2]    *State v. Schmidt*, 323 P.3d 647, 655 (Alaska 2014) (quoting *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (Alaska 2005)).

[3]    *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001).

[4]    *See Schmidt*, 323 P.3d at 655.

[5]    *Id.*

## IV.   DISCUSSION

Harris argues that the denial of death benefits to her violates her right to equal protection under both the Alaska and the United States Constitutions.  She additionally argues that the denial of death benefits to her unconstitutionally infringes on her rights to liberty and privacy under both constitutions.  With regard to the Alaska Constitution, she contends that *Alaska Civil Liberties Union v. State*[6] (*ACLU*) controls the result in this case.

Millennium argues that the Marriage Amendment[7] should be interpreted to preclude same-sex couples from receiving death benefits under the Alaska Workers' Compensation Act.  Millennium also contends that *Ranney v. Whitewater Engineering*[8] controls the result in this case and that Harris's equal protection rights are not violated.

### A.   The Marriage Amendment Does Not Preclude Harris's Claim.

Our recent decision in *State v. Schmidt* addressed the question whether the Marriage Amendment barred a similar equal protection claim.[9]  In *Schmidt* we rejected the State's argument that the Marriage Amendment foreclosed an equal protection challenge by same-sex couples to a real property tax statute that gave certain tax-exemption benefits to married couples.[10]  We stated there that "the Marriage Amendment does not explicitly or implicitly prohibit the State from offering the same property tax

---

[6]     122 P.3d 781 (Alaska 2005).

[7]     Alaska Const. art. I, § 25.

[8]     122 P.3d 214 (Alaska 2005).

[9]     323 P.3d 647 (Alaska 2014).

[10]    *Id.* at 656-59.

exemption to an eligible applicant who has a same-sex domestic partner that the State offers to an eligible applicant who has a spouse."[11]

Just as the State argued in *Schmidt*, Millennium contends that the Marriage Amendment must be interpreted as prohibiting the State from offering to same-sex couples any benefits available to married couples. Millennium offers no legislative history for the amendment itself, relying instead on the history of the enactment of AS 25.05.013. Alaska Statute 25.05.013(b) provides: "A same-sex relationship may not be recognized by the state as being entitled to the benefits of marriage."

Millenium's contention here is substantially similar to an argument presented and rejected in *Schmidt*. As we stated in *Schmidt*, the ballot measure "said nothing about denying or limiting benefits" and "did not refer to, quote, or paraphrase AS 25.05.013(b)."[12] We also observed in both *ACLU*[13] and *Schmidt*[14] that an interpretation of the Marriage Amendment like the one Millennium proposes could violate the federal equal protection clause as interpreted in *Romer v. Evans*.[15] We conclude that the Marriage Amendment does not bar consideration of Harris's equal protection claim.

---

[11]    *Id.* at 658.

[12]    *Id.* at 657.

[13]    *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 786 n.20 (Alaska 2005).

[14]    323 P.3d at 657 n.42 (citations omitted).

[15]    517 U.S. 620 (1996).

**B.**     **The Death-Benefits Provision Of The Alaska Workers' Compensation Act Violates Harris's Equal Protection Rights Under The Alaska Constitution.**

In an equal protection challenge under the Alaska Constitution, the party seeking to show a violation must "show either that facially neutral state action has a discriminatory purpose or that the state action is facially discriminatory."[16] We held in both *Schmidt* and *ACLU* that statutes making benefits available solely to spouses were facially discriminatory.[17] The Alaska Workers' Compensation Act provides death benefits to widows and widowers in the event of a work-related death.[18] Like the tax-exemption statute in *Schmidt*, the workers' compensation statute creates a classification between married and unmarried couples.[19] And, as in *Schmidt*, the statute and Marriage Amendment together prevent same-sex couples from obtaining workers' compensation benefits to the same extent as married couples because same-sex couples are precluded from marrying in Alaska or having their out-of-state marriages recognized.[20] Based on our decisions in *Schmidt* and *ACLU*, we hold that the workers' compensation statute facially discriminates between same-sex and opposite-sex couples.

---

[16]     *Schmidt*, 323 P.3d at 659 (citations omitted).

[17]     *Id.* at 659-60; *Alaska Civil Liberties Union*, 122 P.3d at 788-89.

[18]     AS 23.30.215(a). AS 23.30.395(40) defines "widow" as "includ[ing] only the decedent's wife living with or dependent for support upon the decedent at the time of death, or living apart for justifiable cause or by reason of the decedent's desertion at such a time." The definition of "widower" in AS 23.30.395(41) is similar.

[19]     *See Schmidt*, 323 P.3d at 659.

[20]     *See id.*

We next consider whether "the challenged law treats similarly situated persons differently."[21] Harris argues that the workers' compensation statute treats same-sex and opposite-sex couples differently because opposite-sex couples "can become eligible for benefits by marrying" while same-sex couples "are denied any means of accessing death benefits." Harris contends that she and Fadely were "similarly situated to married different-sex couples in every relevant respect," including their financial interdependence and commitment to each other. In response, Millennium relies on *Ranney v. Whitewater Engineering*[22] to argue that the workers' compensation statute is "marriage-neutral" with respect to death benefits and is therefore "neutral on the issue of whether one's sexual orientation affects eligibility for death benefits."

*Ranney* involved a constitutional challenge to the death-benefits provisions of the Alaska Workers' Compensation Act by a woman who for four years had cohabited with, but never married, her boyfriend.[23] There was no dispute that the couple could have married — by the time of the man's death, the two had become engaged — but they did not.[24] We held that the limitation on benefits to married persons did not violate the woman's right to equal protection under the Alaska Constitution because the distinction the legislature made between married and unmarried couples there was an instance of permissible legislative line drawing that bore a fair and substantial relationship to the purpose of "provid[ing] benefits in a manner that is 'quick, efficient, fair, and

---

[21] *Id.* at 660 (citation and internal quotation marks omitted).

[22] 122 P.3d 214 (2005).

[23] *Id.* at 216.

[24] *Id.*

predictable,' at a reasonable cost to the employer."[25] We explained that "the legislature has determined that legal marriage is an adequate proxy for the more particularized inquiry concerning whether a relationship is serious enough or a partner is sufficiently dependent to justify awarding benefits."[26]

*Ranney* does not control the result in this case: The classes that we are comparing are different and are treated differently. Just as in *ACLU* and *Schmidt*, here "the proper comparison is between same-sex and opposite-sex couples" rather than between married and unmarried couples.[27] The Alaska Workers' Compensation Act itself may deny death benefits to all unmarried individuals, but as we observed in *ACLU*, unmarried opposite-sex couples "have the opportunity to obtain these benefits, because [they] are not prevented by law from marrying."[28] Unlike the survivor in *Ranney*, Harris could not legally marry her partner in Alaska or have an out-of-state marriage recognized here because of the Marriage Amendment.[29]

---

[25]      *Id.* at 223.

[26]      *Id.* at 221.

[27]      *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 788 (Alaska 2005), *quoted in State v. Schmidt*, 323 P.3d 647, 661 n.72 (Alaska 2014).

[28]      *Id.*

[29]      Alaska Const. art. I, § 25. *See also Alaska Civil Liberties Union*, 122 P.3d at 786 (interpreting Marriage Amendment). Millennium also asserts that "Alaska does not recognize common law marriage" to support its argument. Marriages that occur in Alaska must be ceremonial to be valid, AS 25.05.011(b), but we have never decided that Alaska cannot recognize a common law marriage valid in another state. *See Burgess Constr. Co. v. Lindley*, 504 P.2d 1023, 1026 (Alaska 1972) (Erwin, J., concurring) (discussing "the conflicts of law principle that the validity of a marriage is determined by the law of the place where contracted" with regard to common law marriage (citing *Loughran v. Loughran*, 292 U.S. 216 (1934))). *See also Weber v. State, Dep't of*
(continued...)

Harris argues that she and Fadely were financially interdependent and in a personally committed relationship, just like a married couple. Millennium does not directly contest this assertion. We considered and accepted similar arguments in *ACLU* and *Schmidt*, noting that many same-sex couples have "the same level of love, commitment, and mutual economic and emotional support" as married couples and "would choose to get married if they were not prohibited by law from doing so."[30] We thus hold that, for purposes of equal protection analysis here, committed same-sex surviving partners are similarly situated to widows or widowers, and that the death-benefits provision of the Alaska Workers' Compensation Act, together with the Marriage Amendment, treat these similarly situated groups differently.

Under Alaska's equal protection analysis, we next consider "what weight should be afforded the constitutional interest impaired by the challenged enactment."[31] Harris asks this court to apply a heightened level of scrutiny because, she argues, the statute "infringes upon substantial liberty interests" and because "the State has employed a classification based on both sexual orientation and sex." Relying on many federal cases, Harris argues that "differential treatment of individuals based on their sexual orientation warrants heightened scrutiny" under both the Alaska and U.S. Constitutions. Millennium argues that the interest involved is an economic interest entitled to only minimum scrutiny. Amicus Alaska Family Action similarly maintains that sexual

---

[29]    (...continued)
*Revenue*, Mem. Op. & J. No. 1188, 2004 WL 2486271 at *1 (Alaska Nov. 3, 2004) (noting that Alaska court granted divorce to couple whose common law marriage had been recognized by Texas).

[30]    *Alaska Civil Liberties Union*, 122 P.3d at 791, *quoted in Schmidt*, 323 P.3d at 661.

[31]    *Schmidt*, 323 P.3d at 662 (quoting *Alaska Civil Liberties Union*, 122 P.3d at 789) (internal quotation marks omitted).

orientation should not be considered a suspect or quasi-suspect classification subject to more exacting review.

We have previously applied minimum scrutiny to workers' compensation benefits in equal protection challenges because they are economic benefits.[32] And because the minimum scrutiny that applies to economic challenges is sufficient to resolve this case, we do not need to consider Harris's argument that we should apply the heightened scrutiny that applies to other types of discrimination.[33]

After identifying the nature of the constitutional interest, we consider "the purposes served by [the] challenged statute."[34] When the individual interest is economic, the State's objectives must be legitimate.[35] We have held that the purpose of the workers' compensation act is "to 'ensure the quick, efficient, fair and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to employers' " and that this purpose is legitimate.[36]

---

[32] *See, e.g.*, *Ranney v. Whitewater Eng'g*, 122 P.3d 214, 223 (Alaska 2005) (quoting *Williams v. State, Dep't of Revenue*, 895 P.2d 99, 104 (Alaska 1995)).

[33] *Schmidt*, 323 P.3d at 663 (citation omitted).

[34] *Id.* at 662 (quoting *Alaska Civil Liberties Union*, 122 P.3d at 789) (internal quotation marks omitted).

[35] *Id.* (citation omitted).

[36] *Ranney*, 122 P.3d at 223 (quoting *Meek v. Unocal Corp.*, 914 P.2d 1276, 1281 (Alaska 1996)).

The next step is "an evaluation of the state's interest in the particular means employed to further its goals."[37] "At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate."[38]

Harris argues that there is no substantial relationship between means and ends in her case. She identifies cost savings, administrative efficiency, and promoting marriage as purposes for the exclusion of same-sex couples from workers' compensation death benefits. In response, Millennium contends that the purpose of the act is not limited to compensating injured workers and their dependents, and that we should also recognize that the statute is intended to promote the quick and efficient delivery of benefits to injured workers at a reasonable cost.[39] Millennium's arguments further address cost savings and administrative efficiency.

In *Ranney*, we said that "compensating dependents is not the act's singular purpose,"[40] identifying the "broader purpose" of providing indemnity benefits through "a system of compensation that is 'quick, efficient, fair and predictable.' "[41] But compensating dependents of workers who die from work-related injury is nonetheless a purpose of the act: Death benefits are one type of indemnity benefits, and the statute requires some type of dependency for eligibility. The definition of "married" in the statute "includes a person who is divorced but is required by the decree of divorce to

---

[37]    *Schmidt*, 323 P.3d at 662-63 (quoting *Alaska Civil Liberties Union*, 122 P.3d at 789) (internal quotation marks omitted).

[38]    *Id.* (citation and internal quotation marks omitted).

[39]    Millennium does not dispute that the classification here does not bear a fair and substantial relationship to a goal of promoting marriage.

[40]    *Ranney*, 122 P.3d at 220.

[41]    *Id.*

contribute to the support of the former spouse,"[42] and the definition of "widow" requires that the survivor either live with or be dependent on the deceased worker.[43]

Harris argues that the administrative burden and actual costs related to determining whether a surviving partner in a same-sex couple should get workers' compensation death benefits will be low simply because (1) there are not as many same-sex couples as there are opposite-sex couples and (2) work-related deaths are relatively infrequent. While arguing that cost savings are not a valid reason to deny equal treatment, she concludes that "the cost of equality is minimal in this context." Millennium responds by arguing that requiring marriage as a condition of eligibility for death benefits is permissible legislative line-drawing and by pointing out that *Ranney* recognized the cost to employers as a legitimate interest that we should consider. Millennium does not otherwise identify how denial of benefits to same-sex couples who are barred by law from marriage bears a substantial relationship to the statutory purposes identified in *Ranney*.

We agree with Harris that the interests we identified and discussed in *Ranney* were substantially similar to the interests we discussed in *ACLU*: cost savings and administrative convenience, although the focus in *Ranney* was on administrative convenience. In *Ranney* we observed that the legislature could have required an individualized inquiry in every workers' compensation death-benefits case but chose instead to use marriage as "an adequate proxy for the more particularized inquiry concerning whether a relationship is serious enough or the partner is sufficiently dependent to justify awarding benefits."[44] Use of a proxy was justified because "the

---

[42]  AS 23.30.395(25).

[43]  AS 23.30.395(40).

[44]  *Ranney*, 122 P.3d at 221.

-13-                                              6927

potentially increased precision of requiring an ad hoc decision in *all* cases would be so administratively costly that the system would be better served by using a more formal rule . . . for determining which relationships require the payment of benefits."[45]

Acknowledging that marriage may serve as an adequate proxy for opposite-sex couples, Harris contends that it cannot serve as a proxy for same-sex couples because same-sex couples are absolutely prohibited from marrying under Alaska law. We agree with Harris that for same-sex couples marriage cannot serve as the way to determine whether their relationships are "serious enough"[46] or the survivor is "sufficiently dependent to justify awarding benefits"[47] and that an individualized inquiry will be needed. As Harris points out, the statute already requires the Board to make individualized inquiries in some cases because the statute limits benefits to widows and widowers who are "living with or dependent for support upon" the worker at the time of the worker's death,[48] and there are a number of Board decisions demonstrating this point.[49] The Board thus has the administrative capacity to make the type of factual determinations required to establish whether a same-sex couple's relationship should qualify for death benefits.[50] And unlike the challenge in *Ranney* our decision does not

---

[45]     *Id.* (emphasis added).

[46]     *Id.*

[47]     *Id.*

[48]     AS 23.30.395(40).

[49]     *See, e.g.*, *Tonkovich v. Serino, Inc.*, AWCB Dec. No. 08-0137 (July 24, 2008) (finding eligibility for death benefits because spouses were separated for "justifiable cause"); *Reynolds v. GBR Equip., Inc.*, AWCB Dec. No. 05-0345 (Dec. 22, 2005) (denying death benefits to surviving ex-wife of deceased employee because she failed to show she was living with or dependent on decedent).

[50]     We leave it to the Board to consider the relevant factors for an award of

(continued...)

require a particularized inquiry in all cases because we do not disturb our holding that marriage is a valid proxy for those couples who can lawfully marry. We therefore conclude that the exclusion of same-sex couples from the possibility of qualifying for death benefits is not substantially related to the goal of administrative efficiency.

The other governmental interest that the parties discuss is cost savings. Permitting surviving partners involved in an intimate, committed, financially interdependent same-sex relationship to apply for workers' compensation death benefits may increase costs. By increasing the number of potentially eligible dependents, the costs to employers could increase both because the pool of people who potentially qualify for benefits may expand and because there may be more contested hearings. But we held in *Schmidt* that "cost savings alone are not sufficient government objectives under our equal protection analysis."[51] And we agree with Harris that the number of cases involving surviving same-sex partners will likely be limited: The total number of death claims in Alaska is small,[52] and according to the United States Census Bureau, the percentage of

---

[50]    (...continued)
death benefits to a surviving same-sex partner of a deceased worker, but we note that the State has promulgated regulations for its employees to use when enrolling their same-sex partners in insurance programs. 2 Alaska Administrative Code (AAC) 38.010 (2012). These regulations may provide some guidance to the Board in evaluating the evidence. Among the factors the State lists are that the couple be in an exclusive, committed, and intimate relationship for at least 12 months, that the couple reside together, and that they share financial obligations. 2 AAC 38.010(b).

[51]    *State v. Schmidt*, 323 P.3d 647, 663 (Alaska 2014) (quoting *Herrick's Aero-Auto-Aqua Repair Serv. v. State, Dep't of Transp. & Pub. Facilities*, 754 P.2d 1111, 1114 (Alaska 1988)) (internal quotation marks omitted).

[52]    In 2012, for example, there were 30 workplace deaths. Sara Verrelli, *Workplace Deaths in Alaska*, ALASKA ECON. TRENDS (Alaska Dep't of Labor & Workforce Dev., Juneau, Alaska), Dec. 2013, at 11, *available at* http://www.labor.alaska.gov/research/trends/dec13art2.pdf.

same-sex couple households in Alaska in the 2010 census was less than one percent of all households.[53]

In contrast to the position advocated in *Ranney*, an individualized inquiry will not be needed in all death-benefits cases because marriage is still an appropriate proxy for opposite-sex couples.[54] Nor will allowing same-sex partners access to death benefits make workers' compensation benefits slower or less predictable for opposite-sex couples.[55] In short, denying same-sex couples access to death benefits under the workers' compensation statute does not bear a fair and substantial relationship to the purposes of the act as identified in *Ranney*.[56]

Harris provided affidavits and other documentary evidence to provide a factual context for purposes of appeal, but the Board has not yet considered this evidence because Harris was not lawfully married to Fadely at the time of Fadely's death. We therefore remand this case for further proceedings.

---

[53] Martin O'Connell & Sarah Feliz, *Same-sex Couple Household Statistics from the 2010 Census* Appendix Table 1a (U.S. Bureau of Census, Soc., Econ. & Hous. Statistics Div., SEHSD Working Paper No. 2011-26, 2011), *available at* http://www.census.gov/hhes/samesex/data/decennial.html (follow "Detailed Tables" hyperlink under Other Technical and Analytical Reports).

[54] *Cf. Ranney v. Whitewater Eng'g*, 122 P.3d 214, 221 (2005) (pointing out cost of "requiring an ad hoc decision in all cases").

[55] *Cf. id.* at 220-21 (noting that requiring "fact-intensive inquiry could substantially delay the award of benefits").

[56] As noted above, because the statutory classification in conjunction with the Marriage Amendment does not survive minimum scrutiny, we do not need to reach the question whether heightened scrutiny should apply or perform an analysis under federal law.

## V. CONCLUSION

Based on the foregoing, we VACATE the decision of the Alaska Workers' Compensation Appeals Commission denying Harris's claim for death benefits and REMAND to the Commission for further proceedings consistent with this opinion.