*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ELIZABETH WATSON, | ) | |
| | ) | Supreme Court No. S-16752 |
| Petitioner, | ) | Court of Appeals No. A-11592 |
| | ) | |
| v. | ) | Superior Court No. 4BE-11-01326 CR |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7533 – May 28, 2021 |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the District Court of the State of Alaska, Fourth Judicial District, Bethel, Dennis P. Cummings, Judge and Bruce Ward, Magistrate Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Petitioner. Donald Soderstrom, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Respondent.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.
STOWERS, Justice, with whom CARNEY, Justice, joins, dissenting.

## I.    INTRODUCTION

In this petition, a minor convicted of driving under the influence (DUI) argues that the statute that excludes misdemeanor traffic violations from juvenile court

jurisdiction violates her right to equal protection under the Alaska Constitution. She argues that the mandatory jail sentence for first DUI offenders is unfairly different than the dispositions for other misdemeanors in the juvenile code. And she argues that it is unfair for felony DUI offenses to be charged in juvenile court when misdemeanor offenses are not.

We conclude that because driving is an adult activity, the legislature could reasonably decide to treat misdemeanor traffic violations consistently to promote public safety while also reasonably choosing to protect juvenile offenders from the harsh collateral consequences of a felony conviction. We therefore conclude the statute is constitutional and affirm the judgment of the district court.

## II. FACTS AND PROCEEDINGS

In 2011 Elizabeth Watson — then 14 years old —was involved in an auto accident after a night of drinking with friends. The State charged Watson in district court with two counts of DUI, a class A misdemeanor.[1] Watson moved to dismiss the charge for lack of jurisdiction, arguing that she should be prosecuted in juvenile court and that charging her as an adult deprived her of equal protection under the law. The district court denied the motion, as well as Watson's subsequent motion for reconsideration.

The case proceeded to a one-day bench trial in April 2013, and the district court found Watson guilty of both counts of DUI. The court sentenced Watson to 28 days' imprisonment but suspended 25 days. It also imposed fines, revoked her driver's license for 90 days, and placed her on two years' probation.

---

[1] AS 28.35.030(a) (criminalizing the operation of a vehicle "while under the influence of an alcoholic beverage" and while having "0.08 percent or more [BAC]" "within four hours after the alleged operating or driving"); AS 28.35.030(b) (classifying first-time DUI as a class A misdemeanor).

Watson appealed her conviction, arguing that the statute requiring her to be charged in district court rather than juvenile court violated her equal protection and due process rights.[2]  The court of appeals rejected her arguments and affirmed her conviction.[3]  Watson petitioned us to consider the court of appeals' decision, which we granted in order to resolve whether AS 47.12.030(b) violates equal protection by requiring a minor who is accused of a non-felony traffic offense to be charged, prosecuted, and sentenced in the district court in the same manner as an adult.

## III.  DISCUSSION

The Alaska Constitution provides that "all persons are equal and entitled to equal rights, opportunities, and protection under the law."[4]  We interpret the equal protection clause "to be a 'command to state and local governments to treat those who are similarly situated alike.' "[5]  The guarantee of equal protection under the Alaska Constitution is more robust than that under the United States Constitution and so "affords greater protection to individual rights than" its federal counterpart.[6]  We apply our

---

[2]  *Watson v. State*, 400 P.3d 121, 122 (Alaska App. 2017).

[3]  *Id.* at 122-24.

[4]  Alaska Const. art. I, § 1.

[5]  *Pub. Emps.' Ret. Sys. v. Gallant*, 153 P.3d 346, 349 (Alaska 2007) (quoting *Gonzales v. Safeway Stores, Inc.*, 882 P.3d 389, 396 (Alaska 1994)).

[6]  *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 787 (Alaska 2005) (quoting *Malabed v. N. Slope Borough*, 70 P.3d 416, 420 (Alaska 2003)).  Therefore, when presented with an equal protection challenge, we have "[t]ypically . . . focused exclusively on Alaska's equal protection clause" and have not considered the federal equal protection clause.  *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 77 (Alaska 2013); *see also State v. Anthony,* 810 P.2d 155, 157 (Alaska 1991).

"independent judgment to equal protection claims."[7]

Under our equal protection analysis, "we first decide which classes must be compared."[8] "As a matter of nomenclature we refer to that portion of a [statute] that treats two groups differently as a 'classification.' "[9] Once we have identified the relevant classes, we determine whether the statute discriminates between them by treating similarly situated classes differently.[10]

After we identify the classes to be compared, we apply "a flexible three-step sliding-scale" analysis that considers the individual interest at stake, the government interest served by the challenged classification, and the means-ends nexus between the classification and the government interest.[11] The sliding-scale analysis "places a progressively greater or lesser burden on the state, depending on the importance of the individual right affected by the disputed classification and the nature of the governmental interest at stake."[12] When an important individual right is implicated, we require a close relationship between the challenged classification and an important government interest in the classification.[13]

---

[7]     *Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1132 (Alaska 2016).

[8]     *Id.* at 1135.

[9]     *Id.* (quoting *Gallant*, 153 P.3d at 349).

[10]     *See State v. Schmidt*, 323 P.3d 647, 659 (Alaska 2014).

[11]     *Planned Parenthood*, 375 P.3d at 1137.

[12]     *Schmidt*, 323 P.3d at 662 (Alaska 2014) (quoting *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 787 (Alaska 2005)).

[13]     *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d
(continued...)

## A. The Classifications Created By The Juvenile Jurisdiction Statutes

In several recent cases, we have emphasized that a classification is defined by the terms of the statute at issue.[14] The statutes implicated here classify individuals according to the offenses of which they are accused. Alaska Statute 47.12.020 establishes a general rule that all "minor[s] under 18 years of age" who have violated criminal laws are subject to the jurisdiction of juvenile court. Alaska Statute 47.12.030 provides a number of exceptions to this general rule, including one for "minor[s] . . . accused of violating . . . a traffic statute or regulation," who "shall be charged, prosecuted, and sentenced in the district court in the same manner as an adult."[15] But this exception does not apply when the minor has been accused of committing a felony violation.[16]

---

[13] (...continued)
1271,1278-79 (Alaska 2013).

[14] *See, e.g.*, *Harris v. Millennium Hotel*, 330 P.3d 330, 334 (Alaska 2014) (reading the Alaska Workers' Compensation Act and the Marriage Amendment to create two classes: opposite-sex couples for whom death benefits are available, and same-sex couples for whom such benefits are unavailable); *Schmidt*, 323 P.3d at 659 (reading the tax exemption statute and the Marriage Amendment to create two classes: opposite-sex couples for whom tax benefits are available, and same-sex couples for whom such tax benefits are unavailable); *Titus*, 305 P.3d at 1277 (reading an auto-insurance statute to create two classes: uninsured drivers who may face license suspension, and uninsured drivers who do not face license suspension); *cf. Alaska Civil Liberties Union*, 122 P.3d at 788 ("When a 'law *by its own terms* classifies persons for different treatment,' this is known as a facial classification." (emphasis in original) (quoting JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 14.4, at 711 (7th ed. 2004))).

[15] AS 47.12.030(b)(1).

[16] AS 47.12.030(b) ("When a minor is accused of violating a statute specified in this subsection, *other than a statute the violation of which is a felony*, . . . the minor accused of the offense shall be charged, prosecuted, and sentenced in the district court
(continued...)

Taken together, these statutes create two classes: minors charged with felony traffic offenses, who are charged as juveniles, and those charged with non-felony traffic offenses, who are charged as adults. We therefore consider these two groups of minors as the relevant classes for our equal protection analysis.

Watson argues that such a classification is too broad. Watson suggests that we focus only on minors accused of non-felony DUI, and compare them either to minors accused of most other offenses or minors accused of felony DUI. But this classification would be too narrow. As the United States Supreme Court has explained, "the validity of a broad legislative classification is not properly judged by focusing solely on the portion of the disfavored class that is affected most harshly by its terms."[17]

The same reasoning applies to our own equal protection clause. Here, the law classifies all minors according to the severity and nature of their crime. We should not evaluate the constitutionality of a statute impacting all juvenile traffic offenders by considering only the treatment of those charged with a DUI. We therefore consider the two statutorily defined classes of minors charged with non-felony traffic offenses and minors charged with felony traffic offenses.

### B. The Three-Step Equal Protection Analysis

We must next determine whether the rationales for AS 47.12.020 and AS 47.12.030(b)(1) justify different treatment of minors charged with non-felony traffic offenses and those charged with felony traffic offenses.[18] As noted above, this analysis

---

[16]    (...continued)
in the same manner as an adult." (emphasis added)).

[17]    *Schweiker v. Hogan*, 457 U.S. 569, 589 (1982).

[18]    *See Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1136 (Alaska 2016).

consists of a three-step process. We first consider the private interest affected by the classification; we next consider the State's interest in the classification; finally, we determine whether the relationship between the State's interest and the classification is close enough to justify the challenged legislation.[19] Throughout, we use a sliding scale to determine the appropriate level of review; "[d]epending upon the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation."[20]

### 1. All offenders have a special interest in rehabilitation.

The first step of our equal protection analysis requires us to consider the personal right or interest impacted by the State's classification. At statehood, Article I, section 12 of the Alaska Constitution provided that "[p]enal administration shall be based on the principle of reformation and upon the need for protecting the public."[21] Based on this provision, we have recognized that both juvenile[22] and adult[23] offenders have a

---

[19]     *Id*. at 1137.

[20]     *Id.* (quoting *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 269-70 (Alaska 1984)).

[21]     Section 12 was amended in 1994 to provide that criminal administration shall be based upon "the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation." Alaska Const. art. I, § 12.

[22]     *State v. Sandsness*, 72 P.3d 299, 307 (Alaska 2003) ("Society's commitment to the goal of rehabilitating juveniles by reintegrating them with their families and the public reflects an implicit belief that early reintegration is more likely to maximize public safety in the long-term than prolonged isolation of juveniles from their families and the broader community of law-abiding citizens.").

[23]     *Abraham v. State*, 585 P.2d 526, 531 (Alaska 1978); *State v. Chaney*, 477 P.2d 441, 444, 447 (Alaska 1970) (disapproving of a sentence, in part for failing to
(continued...)

special interest in rehabilitative treatment. Consequently, both the juvenile disposition statute[24] and the adult sentencing statute[25] require consideration of the offender's rehabilitation as an important sentencing goal.

The dissenting opinion relies on the "uniquely rehabilitative focus" of the juvenile system without addressing the details of the current juvenile statutes or the numerous rehabilitative requirements of the DUI statute. A DUI conviction may include the following consequences to discourage alcohol abuse and encourage good driving: an ignition interlock device preventing drinking before driving,[26] court access to prior treatment records,[27] alcohol screening and treatment as required by an alcohol safety action program,[28] a term of inpatient treatment specified in the judgment,[29] and imprisonment at a community residential center or by electronic monitoring at a private residence.[30] A defendant like Watson who completes an inpatient treatment program

---

[23]     (...continued)
encourage the "rehabilitation of the offender into a noncriminal member of society").

[24]     AS 47.12.140(1)(G) (requiring consideration of "the interest of the public in securing the minor's rehabilitation").

[25]     AS 12.55.005(2) (requiring consideration of "the prior criminal history of the defendant and the likelihood of rehabilitation").

[26]     AS 28.35.030(g).

[27]     AS 28.35.030(d).

[28]     AS 28.35.030(h).

[29]     AS 28.35.030(i).

[30]     AS 28.35.030(k).

may receive credit against her jail sentence for the time spent in treatment.[31] A juvenile disposition could also order some of these conditions, but there is no indication that a juvenile offender would have greater access to rehabilitative treatment.

### 2. There are special problems involved with evaluating the relationship between rehabilitation and the other important sentencing goals.

There is a conflict between our recognition of rehabilitation as a special individual interest and our past scrutiny of sentencing statutes. Ordinarily, the degree of fit between the statute's means and end depends on the importance of the individual interest at stake.[32] If the individual interest is relatively insignificant, there need only be "a substantial relationship" between the classification and a legitimate state interest.[33] If the individual interest is important, there must be a "close relationship" between the classification and an important State interest.[34]

On the other hand, we have historically recognized that our equal protection review of legislative sentencing decisions should be fairly deferential. "It is elementary that the power to define crimes and fix punishments rests in the legislature. In the

---

[31]     AS 12.55.027.

[32]     *State v. Schmidt*, 323 P.3d 647, 662 (Alaska 2014) (citing *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 787 (Alaska 2005)).

[33]     *Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1137 (Alaska 2016).

[34]     *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1278 (Alaska 2013).

performance of that function, that body is to use the discretion lodged in it, and not be confined by narrow or unduly restrictive limits."[35]

This approach is consistent with the debate over Article I, section 12, in which the founders indicated that a sentencing provision need not satisfy both of the occasionally conflicting goals of criminal administration, thus leaving greater legislative discretion for sentencing decisions.[36] The language of this section was specifically revised to make it clear that "a sentence which addressed either reformation or community protection would be constitutionally valid."[37]

Since that time, the Alaska Constitution has been amended to explicitly allow consideration of multiple sentencing goals. The pertinent language now provides: "Criminal administration shall be based upon the following: the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation."[38]

But the courts continue to follow the interpretive principle that the founders embraced long ago. "The legislature may reasonably emphasize certain goals over others when determining the individual components of a criminal sentence."[39] We have

---

[35]  *Alex v. State*, 484 P.2d 677, 684 (Alaska 1971).

[36]  *Koteles v. State*, 660 P.2d 1199, 1202 (Alaska App. 1983) (Singleton, J., concurring).

[37]  *Id*. (citing 2 Proceedings of the Alaska Constitutional Convention 1308-1309 (Jan. 5, 1956)).

[38]  Alaska Const. art I, § 12.

[39]  *Forster v. State*, 236 P.3d 1157, 1174 (Alaska App. 2010).

therefore recognized that it is sufficient if each component of a criminal sentence "be reasonably related to at least one of these constitutional principles."[40]

As noted above, the conflict between these principles affects our scrutiny of the statutes that define juvenile jurisdiction. However, we need not resolve that conflict here because we conclude that the classification the statutes create is closely related to important State interests.

### 3. The challenged classification is closely related to important government interests.

Our equal protection analysis next requires us to consider the State's interest in the classification and the means-end nexus between that classification and the government interest.[41] Here, the challenged classification serves two important government interests: protecting the public and rehabilitating juvenile offenders. We conclude that the classification created by AS 47.12.030(b) is closely related to both goals and therefore does not violate the equal protection clause.

### a. The uniform treatment of driving offenses is closely related to the State's important interest in protecting the public.

Driving is a dangerous and highly regulated adult activity,[42] and the State has an interest in holding traffic violators uniformly accountable for bad driving.[43] A

---

[40]     *State v. Ranstead*, 421 P.3d 15, 20 (Alaska 2018).

[41]     *See Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1137 (Alaska 2016).

[42]     *See Ardinger v. Hummell*, 982 P.2d 727, 731 (Alaska 1999) ("Children who physically control vehicles must, for public safety reasons, be held to an adult standard of care.").

[43]     *Cf. Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271,
(continued...)

uniform penalty system promotes the State's interests in public safety and in general deterrence, interests recognized in our constitution and statutes.[44] This includes deterring all drivers from engaging in unsafe driving behaviors such as drinking and driving. Such behaviors inherently threaten public safety, especially when combined with minors' relative lack of driving experience.

To further these goals, the legislature has enacted a uniform system of graduated license penalties for driving offenses. Drivers convicted of DUI have their licenses revoked for 90 days for a first offense, one year for a second offense, three years for a third offense, and five years for a subsequent offense.[45] Drivers convicted of reckless driving have their licenses revoked for a minimum of 30 days for a first offense, one year for a second offense, and three years for a subsequent offense.[46] The heavier revocation consequences for DUI convictions are justified because DUI is a more serious offense, and thus the State's interest in deterring such unsafe behavior is greater.

The dissenting opinion concludes that juvenile DUI offenses should be excluded from the adult system. This approach would completely upset the system of

---

[43]    (...continued)
1278 (Alaska 2013) (noting the State's interest in deterring uninsured driving).

[44]    *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) (noting that the Alaska Constitution includes the goal of "deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender"); AS 12.55.005(5) (requiring sentencing judges to consider "the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct").

[45]    AS 28.15.181(c)(1)-(4).

[46]    AS 28.15.181(b)(1)-(2).

graduated penalties. A juvenile adjudication is not considered a criminal conviction,[47] and an adjudication does not impose any of the civil disabilities of a conviction.[48] So if juvenile DUI offenses were excluded, a juvenile convicted of the lesser offense of reckless driving would still receive a mandatory minimum license revocation of up to three years. But regardless of his or her prior record, a juvenile adjudicated for DUI would not receive any mandatory license revocation at all. This would create a sentencing scheme where the "gravity of the sanctions" did not "roughly follow the gravity of the circumstances."[49]

In addition, the traffic statutes require the department of public safety to establish a uniform demerit point system "[f]or the purpose of identifying habitually reckless or negligent drivers and habitual or frequent violators of traffic laws."[50] If a driver accumulates 12 points in one year or 18 points over two years, then the driver's license must be suspended or revoked.[51] Under this system, convictions for DUI or reckless driving each carry a value of 10 demerit points.[52] Negligent driving, another lesser included offense of DUI,[53] carries a value of 6 points.[54] Speeding can carry

---

[47]     AS 47.12.180(a)(3).

[48]     AS 47.12.180(a)(1).

[49]     *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1279 (Alaska 2013).

[50]     AS 28.15.221(a).

[51]     AS 28.15.221(b).

[52]     2 Alaska Administrative Code (AAC) 90.310(a)(3), (6) (2021).

[53]     *Comeau v. State*, 758 P.2d 108, 117 (Alaska App. 1988).

[54]     2 AAC 90.310(a)(12).

between 2 and 6 points depending on the circumstances.[55]  This system is obviously graduated in severity to support the State's interest in deterring bad driving.  But if we followed the dissenting opinion, a juvenile convicted of traffic infractions like negligent driving or speeding would still accumulate demerit points that could lead to a suspension; a juvenile adjudicated for misdemeanor DUI offenses would not accumulate any points at all.

We thus conclude that the inclusion of juvenile DUI offenses in the same system as other driving offenses closely promotes the State's interest in a uniform system of penalties to deter bad driving and protect the public.

### b.    The exclusion of felony traffic offenses from the adult system is closely related to the important goal of rehabilitation.

The State also has an interest in promoting the rehabilitation of juvenile offenders.[56]  We have noted before that minors "do[] not have mature judgment and may not fully realize the consequences of [their] acts."[57]  The State "has a substantial interest in [the] welfare" of minors,[58] and through rehabilitation minors may be given "the skills

---

[55]    2 AAC 90.310(a)(19).

[56]    *See* AS 47.12.010; *see also State v. Sandsness*, 72 P.3d 299, 302-04 (Alaska 2003) (noting the rehabilitative goals of the juvenile justice system and the benefits of rehabilitation); *State v. Ladd*, 951 P.2d 1220, 1225 (Alaska App. 1998) ("There is a public interest in 'rehabilitating wayward youths' who are in fact 'rehabilitatable in their youth.' " (quoting *W.M.F. v. State,* 723 P.2d 1298, 1300 (Alaska App. 1986))).

[57]    *Henson v. State*, 576 P.2d 1352, 1354 (Alaska 1978) (quoting *P.H. v. State*, 504 P.2d 837, 841 (Alaska 1972), *superseded by statute*, Ch. 63, §§ 13, 15, SLA 1977, *as recognized by In re F.S.*, 586 P.2d 607, 610 (Alaska 1978)).

[58]    *Wilsonoff v. Wilsonoff*, 514 P.2d 1264, 1267 (Alaska 1973); *cf. Pub. Def. Agency v. Superior Court*, 534 P.2d 947, 949 (Alaska 1975) ("Traditionally, the states (continued...)

-14-                                                    **7533**

needed to live responsibly and productively."[59] The legislature could reasonably conclude that the consequences of a felony conviction would too severely impair its interest in rehabilitating a juvenile convicted of a regulatory offense.[60]

The tension between the important individual interest in rehabilitation and the legislative discretion to choose among multiple sentencing goals affects our scrutiny of the statutes that define juvenile jurisdiction. Alaska Statute 47.12.030(b) promotes a uniform policy designed to discourage dangerous driving by generally treating all drivers as adults. Strict adherence to this policy, however, would expose minors convicted of felony driving offenses to the harsh consequences of an adult felony conviction. As the court of appeals rightfully noted in this case, "[f]elony offenders are subject to significantly increased amounts of imprisonment, as well as various lifetime legal disabilities."[61]

The dissenting opinion treats the collateral consequences of a felony conviction the same as a misdemeanor conviction. This allows the opinion to say that the State's interest in rehabilitation is not closely related to the statutory exclusion of regulatory felonies from the adult system. But the legal consequences of an adult felony conviction go far beyond the stigma of wrongdoing. For example, a person convicted

---

[58]   (...continued)
have been legitimately concerned with the area of family law, and, under the doctrine of parens patriae, in particular, in the promotion of the welfare of children dwelling within their boundaries." (footnote omitted)).

[59]   AS 47.12.010(a).

[60]   *Watson v. State*, 400 P.3d 121, 123 (Alaska App. 2017) ("The legislature could validly decide that minors should not face [the consequences of a felony conviction] for their actions, even when the felony arises from the act of driving.").

[61]   *Id*. (citing AS 12.55.125).

of a felony may be barred from possessing a firearm or ammunition,[62] may be disqualified from voting,[63] may be disqualified from serving as a juror,[64] and may be ineligible for a permanent fund dividend.[65] A school district may deny admission to a child who has been convicted of a felony.[66] A felony conviction is also grounds for license denial or other sanctions for many professions.[67] Thus, the legislature could have reasonably concluded that the legal consequences of a felony conviction are too severe for a minor convicted of a driving offense, but that the penalties for a misdemeanor conviction are appropriate.

Watson's argument seems to assume that the three-day minimum jail sentence for a DUI offender charged in district court makes this system harsher than the juvenile system. But the maximum consequences of a juvenile adjudication are at least twice as serious as those of a misdemeanor DUI conviction. The maximum sentence for a first misdemeanor conviction is one year;[68] however, a juvenile offender may be ordered to an indeterminate detention of up to two years, and this sanction may be

---

[62] 18 U.S.C. 922(g)(1) (2018).

[63] AS 15.05.030(a).

[64] AS 09.20.020(2); AS 33.30.241(b).

[65] AS 43.23.005(d).

[66] AS 14.30.045(5).

[67] *See, e.g.,* AS 08.20.170(a)(4)(A) (chiropractors); AS 08.29.400(a)(2) (licensed professional counselors); AS 08.36.315(5) (dentists); AS 08.38.040(4) (dietitians); AS 08.54.605(a)(1)(B) (big game guides); AS 08.65.110(4) (midwives); AS 08.45.060(4) (naturopaths); AS 44.50.020(5) (notaries public); AS 08.84.120(a)(3) (physical therapists); 13 AAC 62.020(a)(6) (2019) (prison guards); AS 08.88.171(a) (real estate brokers).

[68] AS 28.35.030(b); AS 12.55.135(a).

extended until the juvenile reaches age 20.[69] At the very least, the legislature could have reasonably concluded that these longer potential periods of detention or supervision in the juvenile system were sufficient to support a distinction between a felony DUI disposition in the juvenile system and the more limited consequences of a misdemeanor DUI conviction in the adult system.

Because of the severe consequences of an adult felony conviction, the State has chosen to temper its policy of deterrence by allowing minors charged with traffic felonies the opportunity to have their cases tried in juvenile court. Classifying offenders according to whether they are charged with a felony or misdemeanor violation is thus closely related to the state's competing interests of deterrence and rehabilitation.

## IV. CONCLUSION

The legislative classifications here are closely related to the State's important interests. We therefore conclude that AS 47.12.030(b)(1) does not violate the equal protection clause. The district court's judgment is AFFIRMED.

---

[69] AS 47.12.120(b)(1). At least two juvenile offenders have unsuccessfully argued that longer periods of detention and supervision in the juvenile system than those imposed for adult misdemeanor penalties violates equal protection. *See A.K. v. State*, No. A-7824, 2001 WL 864193 at *2 (Alaska App. Aug. 1, 2001); *M.O.W. v. State*, 645 P.2d 1229, 1231 n.4 (Alaska App. 1982).

STOWERS, Justice, with whom CARNEY, Justice, joins, dissenting.

I dissent from the court's opinion in this case. The following analysis explains my reasoning and is the opinion that the court should have issued. I urge the legislature to carefully study my analysis and fix the injustice the court's opinion perpetuates.

## I.    INTRODUCTION

A minor convicted of driving under the influence (DUI) argues that the statute excluding misdemeanor traffic violations from juvenile court jurisdiction violates her right to equal protection under the Alaska Constitution. She argues that the mandatory jail sentence for first-time DUI offenders is unfairly different from the dispositions for other misdemeanors in the juvenile code. And she argues that it is unfair for felony DUI offenses to be charged in juvenile court when misdemeanor DUI offenses are not.

I conclude that the juvenile court exclusion statute facially discriminates between minors accused of felony DUI, who are tried in juvenile court, and minors accused of misdemeanor DUI, who are tried in district court as adults. Juveniles have an important interest in accessing the rehabilitative opportunities of the juvenile justice system and in avoiding the collateral consequences of being charged and sentenced as adults. The State also has an important interest in deterring unsafe driving and in promoting the rehabilitation of juvenile offenders. But there is not a close relationship between the State's interests and the classification created by the juvenile court exclusion statute. I therefore would hold that the statute violates the minor's equal protection rights, reverse the court of appeals' decision affirming the district court's judgment, and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

In 2011 Elizabeth Watson — then 14 years old — was involved in an auto

accident after a night of drinking with friends. The State charged Watson in district court with two DUI counts, both class A misdemeanors.[1] Watson moved to dismiss the charges for lack of jurisdiction; she argued that she should have been prosecuted in juvenile court and that charging her as an adult deprived her of equal protection of the law. The district court denied the motion, as well as Watson's subsequent motion for reconsideration.

The case proceeded to a one-day bench trial in April 2013, and the district court found Watson guilty of both DUI counts. The court consolidated the two charges for sentencing purposes; the two counts became one, leading to a single conviction. The court sentenced Watson to 28 days' imprisonment, but it suspended 25 days and stayed execution of the sentence pending appeal. It also imposed fines, revoked her driver's license for 90 days, and placed her on two years' probation.

Watson appealed her conviction, arguing that the statute requiring her to be charged in district court rather than juvenile court violated her equal protection and due process rights.[2] The court of appeals rejected her arguments and affirmed her conviction.[3] Watson petitioned for hearing of the court of appeals' decision, which we granted to resolve whether AS 47.12.030(b), the juvenile court exclusion statute, violates equal protection by requiring a minor accused of a non-felony traffic offense to be charged, prosecuted, and sentenced in the district court in the same manner as an adult.

---

[1]    *See* AS 28.35.030(a)(1)-(2) (criminalizing both operation of vehicle "while under the influence of an alcoholic beverage" and operation of vehicle if person has "0.08 percent or more" blood alcohol content "as determined by a chemical test taken within four hours after the alleged operating or driving"); AS 28.35.030(b) (classifying first-time DUI as a class A misdemeanor).

[2]    *Watson v. State*, 400 P.3d 121, 122 (Alaska App. 2017).

[3]    *Id.* at 123-24.

## III.  STANDARD OF REVIEW

"We apply our independent judgment to equal protection claims."[4]  In exercising our de novo review, we will adopt "the rule of law most persuasive in light of precedent, reason, and policy."[5]

## IV.  DISCUSSION

The Alaska Constitution "mandates 'equal treatment of those similarly situated.' "[6]  It provides that "all persons are equal and entitled to equal rights, opportunities, and protection under the law."[7]  We interpret the equal protection clause "to be a 'command to state and local governments to treat those who are similarly situated alike.' "[8]  The Alaska Constitution's equal protection guarantee is more robust than that of the United States Constitution and so "affords greater protection to individual rights" than its federal counterpart.[9]

---

[4]  *Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1132 (Alaska 2016).

[5]  *Id.* (quoting *State v. Schmidt*, 323 P.3d 647, 655 (Alaska 2014)).

[6]  *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 787 (Alaska 2005) (quoting *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 909 (Alaska 2001)).

[7]  Alaska Const. art. I, §1.

[8]  *Pub. Emps.' Ret. Sys. v. Gallant*, 153 P.3d 346, 349 (Alaska 2007) (quoting *Gonzales v. Safeway Stores, Inc.*, 882 P.3d 389, 396 (Alaska 1994)).

[9]  *Alaska Civil Liberties Union*, 122 P.3d at 787 (quoting *Malabed v. N. Slope Borough*, 70 P.3d 416, 420 (Alaska 2003)).  When presented with an equal protection challenge, we therefore have "[t]ypically . . . focused exclusively on Alaska's equal protection clause" and have not considered the federal equal protection clause.  *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 77 (Alaska 2013); *see also State v. Anthony*, 810 P.2d 155, 157 (Alaska 1991).

Under our equal protection analysis, "we first decide which classes must be compared."[10] "As a matter of nomenclature we refer to that portion of a [statute] that treats two groups differently as a 'classification.' "[11] Once we have identified the relevant classes, we determine whether the statute discriminates between them.[12] Differential treatment poses an equal protection problem only if similarly situated classes are treated differently.[13]

Our core equal protection analysis consists of determining whether individuals in the two classes are similarly situated.[14] We apply "a flexible three-step sliding scale" that considers the individual interest at stake, the government interest served by the challenged classification, and the means-ends nexus between the classification and the government interest.[15] The sliding-scale analysis "places a progressively greater or lesser burden on the [S]tate, depending on the importance of the

---

[10]    *Planned Parenthood of the Great Nw.*, 375 P.3d at 1135.

[11]    *Id.* (quoting *Gallant*, 153 P.3d at 349).

[12]    *See State v. Schmidt*, 323 P.3d 647, 659 (Alaska 2014).

[13]    *See State, Dep't of Nat. Res. v. Alaska Riverways, Inc.*, 232 P.3d 1203, 1220 (Alaska 2010) (holding that commercial user of public waterway "failed to establish a violation of its equal protection rights" because among other things it had not shown that the State treated it differently than other users).

[14]    *See Planned Parenthood of the Great Nw.*, 375 P.3d at 1135 ("When equal protection claims are raised, the question is whether two groups of people who are treated differently are similarly situated and therefore are entitled to equal treatment under the constitution." (quoting *Gallant*, 153 P.3d at 349)).

[15]    *Id.* at 1137.

individual right affected by the disputed classification and the nature of the governmental interest at stake."[16]

## A. The Statute Creates Two Classes: Minors Charged With Felony DUI And Minors Charged With Misdemeanor DUI.

The State argues that the law treats "every driver in Alaska . . . equally" by requiring the adjudication of all non-felony traffic offenses in adult court, and that without disparate treatment of classes, there is no equal protection issue. This argument ignores the law's differing treatment of minors.[17]

We have emphasized that a classification is defined by the statutory terms at issue.[18] Watson challenges AS 47.12.030(b), which provides:

> When a minor is accused of violating a statute specified in this subsection, other than a statute the violation of which is a felony, this chapter and the Alaska Delinquency Rules do not apply and the minor accused of the offense shall be charged, prosecuted, and sentenced in the district court in

---

[16]     *Schmidt*, 323 P.3d at 662 (quoting *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 787 (Alaska 2005)).

[17]     *Cf. Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1277 (Alaska 2013) ("DMV argues there is no equal protection issue because the proof-of-insurance statutes treat similarly situated persons alike by requiring all drivers to carry insurance. But DMV's perspective is too broad. Here, similarly situated *uninsured* motorists are treated differently. Alaska Statute 28.22.021 bases the proof-of-insurance requirement, and ultimately suspension, on the results of a motor vehicle accident . . . . In requiring proof of insurance and suspension for some, but not all, uninsured motorists, the statutes treat similarly situated persons differently." (emphasis in original)).

[18]     *See id.*; *Harris v. Millenium Hotel*, 330 P.3d 330, 334 & n.18 (Alaska 2014) (looking to statute's terms and definitions to conclude "the workers' compensation statute creates a classification between married and unmarried couples"); *Schmidt*, 323 P.3d at 659 ("The words of the tax exemption statute and regulations create a classification between married couples and unmarried couples.").

the same manner as an adult; . . . the provisions of this subsection apply when a minor is accused of violating

(1) a traffic statute or regulation, or a traffic ordinance or regulation of a municipality; . . . .

On its face, AS 47.12.030(b) distinguishes between minors charged with a non-felony traffic offense and minors charged with a felony traffic offense.[19]

In addition to considering the statutory terms at issue, we also consider a statute in relation to other laws that offer additional context and meaning.[20] The classification created by AS 47.12.030(b) is further refined by its relationship to Alaska's traffic statutes. Watson contends that the relationship between AS 47.12.030(b) and AS 28.35.030, the DUI statute, results in differential treatment of similar classes. Misdemeanor DUI, of which Watson was convicted in district court, carries a mandatory minimum sentence of three days' imprisonment for a first offense and twenty days' imprisonment for a second offense.[21] In contrast, if Watson had not been a first-time offender, but instead had previously been convicted of DUI two or more times, then she

---

[19] *See Alaska Civil Liberties Union*, 122 P.3d at 788 ("When a 'law *by its own terms* classifies persons for different treatment,' this is known as a facial classification." (emphasis in original) (quoting JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 14.4, at 711 (7th ed. 2004))).

[20] *See Harris*, 330 P.3d at 334-35 (reading Alaska Worker's Compensation Act and Marriage Amendment together to create two classes: opposite-sex couples for whom death benefits are available and same-sex couples for whom such benefits are unavailable); *Schmidt*, 323 P.3d at 659-60 (reading tax exemption statute and related regulation together with Marriage Amendment and concluding two classes are created: opposite-sex couples for whom tax benefits are available and same-sex couples for whom such tax benefits are unavailable).

[21] AS 28.35.030(b)(1)(A)-(B); AS 28.35.030(b)(2) (prohibiting court from suspending imposition of sentence and also from suspending execution of sentence except on condition that offender serve the minimum term of imprisonment).

would have been guilty of felony DUI and subject to juvenile court jurisdiction.[22] Alaska Statutes 47.12.030(b) and 28.35.030 therefore create a structure where a minor who is a repeat DUI offender is treated as a juvenile whereas a minor with no (or only one) prior DUI is treated as an adult and is subject to a minimum sentence of imprisonment. Read together, AS 47.12.030(b) and AS 28.35.030 thus create two classes: minors accused of felony DUI, who are tried in juvenile court; and minors accused of misdemeanor DUI, who are tried in district court as adults. I therefore consider these two groups of minors as the relevant classes for our equal protection analysis.

B.      **The Statutes When Read Together Are Facially Discriminatory.**

The next step in our equal protection analysis is determining whether the statute has a discriminatory purpose. A claimant "must show either that [a] facially neutral [statute] has a discriminatory purpose or that the [statute] is facially discriminatory."[23] A statute is facially discriminatory when, "by its own terms," it "classifies persons for different treatment."[24] As established above, AS 47.12.030(b) and AS 28.35.030 treat two similar classes of minors differently; the statutes are therefore facially discriminatory. "[W]hen a law is discriminatory on its face, 'the question of discriminatory intent is subsumed by the determination that the classification established by the terms of the challenged law or policy is, itself, discriminatory.' "[25]

---

[22]      *See* AS 28.35.030(n); AS 47.12.030(b).

[23]      *Schmidt*, 323 P.3d at 659 (footnote omitted).

[24]      *Id.* (quoting *Alaska Civil Liberties Union*, 122 P.3d at 788).

[25]      *Alaska Civil Liberties Union*, 122 P.3d at 788 (quoting *Hamlyn v. Rock Island Cty., Metro. Mass Transit Dist.*, 986 F. Supp. 1126, 1133 (C.D. Ill. 1997)) (concluding that programs granting benefits to spouses only in heterosexual relationships are facially discriminatory).

C.     **Core Equal Protection Analysis**

Having determined that the statutes are facially discriminatory, I proceed to the core of our equal protection analysis: determining whether the rationales for AS 47.12.030(b) and AS 28.35.030 justify differential treatment of minors charged with misdemeanor DUI and felony DUI.[26] As noted above, this analysis consists of a three-step process. We first consider the private interest affected by the classification; we next consider the State's interest in the classification; and we finally determine whether the relationship between the State's interest and the classification is close enough to justify the challenged legislation.[27] Throughout, we use a sliding scale to determine the appropriate level of review; "[d]epending upon the primacy of the interest involved, the [S]tate will have a greater or lesser burden in justifying its legislation."[28]

1.     **Juvenile offenders have an important interest in the rehabilitative focus of the juvenile justice system.**

The first step of our core equal protection analysis requires us to consider the personal right or interest impacted by the State's classification. The Alaska Constitution establishes that reformation is one of the main principles on which criminal administration is based,[29] and thus all criminal offenders have an interest in rehabilitation. Alaska Statute 12.55.005 furthers this principle by requiring sentencing

---

[26]     *See Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1136 (Alaska 2016).

[27]     *Id*. at 1137.

[28]     *Id.* (quoting *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 269-70 (Alaska 1984)).

[29]     Alaska Const. art. I, § 12.

judges in adult court to consider the "likelihood of [a defendant's] rehabilitation."[30] And we have long recognized the significance of rehabilitation for both the public and for the offender.[31]

This interest in rehabilitation is especially acute for minors, like Watson.[32] Given their developing maturity, minors are particularly amenable to reform, and the State has taken care to see that minors' sentences are not merely punitive. Indeed, the State has created a juvenile justice system where "rehabilitation rather than punishment is the express purpose of juvenile jurisdiction."[33] Alaska Statute 47.12.010 exemplifies this dedication to reform, stating that the purposes of the delinquent minors chapter are to "respond to a juvenile offender's needs in a manner that is consistent with . . . prevention of repeated criminal behavior . . . [and] development of the juvenile into a productive citizen," and also to "provide an early, individualized assessment and action plan for each juvenile offender in order to prevent further criminal behavior."

---

[30]    AS 12.55.005(2).

[31]    *See Abraham v. State*, 585 P.2d 526, 531 (Alaska 1978) ("[S]ociety will benefit from [the reformation of an offender], but so will the offender . . . ."); *Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977) ("[P]arole conditions must be reasonably related to the rehabilitation of the offender and the protection of the public and must not be unduly restrictive of liberty."); *State v. Chaney*, 477 P.2d 441, 444, 447 (Alaska 1970) (disapproving of sentence in part for failing to encourage "rehabilitation of the offender into a noncriminal member of society").

[32]    *See State v. Sandsness*, 72 P.3d 299, 307 (Alaska 2003) ("Society's commitment to the goal of rehabilitating juveniles by reintegrating them with their families and the public reflects an implicit belief that early reintegration is more likely to maximize public safety in the long-term than prolonged isolation of juveniles from their families and the broader community of law-abiding citizens.").

[33]    *Id.* at 302-03 (quoting *Rust v. State*, 582 P.2d 134, 140 n.21 (Alaska 1978)).

Minors thus have an important interest in rehabilitation, an interest that is vindicated by accessing the juvenile justice system and its uniquely rehabilitative focus.

We have similarly noted that "the principal precept behind the [juvenile] court concept" is that minors lack "mature judgment and may not fully realize the consequences of [their] acts [and therefore] should not generally have to bear the stigma of a criminal conviction for the rest of [their lives]."[34] Juveniles therefore also have an important interest in avoiding the collateral consequences associated with a criminal conviction that may impact future education and employment prospects.[35] By denying some minors access to the juvenile justice system, AS 47.12.030(b) burdens those important interests; it therefore demands close scrutiny.[36]

### 2. The State has important interests in deterring unsafe driving and rehabilitating minors.

When the law burdens an important interest, as in this case, it "must bear a close relationship to an important state interest."[37] The State has two important interests that apply to the differential treatment of juvenile DUI offenders. Driving is a

---

[34] *P.H. v. State*, 504 P.2d 837, 841 (Alaska 1972), *superseded by statute*, ch. 63, §§ 13, 15, SLA 1977, *as recognized in In re F.S.*, 586 P.2d 607, 610 (Alaska 1978).

[35] *See Journey v. State*, 895 P.2d 955, 959 (Alaska 1995) ("The pernicious effects of criminal records are well documented. . . . [A] person with a criminal record is often burdened by social stigma, subjected to additional investigation, prejudiced in future criminal proceedings, and discriminated against by prospective employers.").

[36] *See Malabed v. N. Slope Borough*, 70 P.3d 416, 421 (Alaska 2003) (explaining that "impairment" of important interest "requires us to give close scrutiny" to challenged state action).

[37] *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1278 (Alaska 2013); *see also Malabed*, 70 P.3d at 421 (noting that state interest must be both legitimate and important).

highly regulated adult activity,[38] and the State argues that it has an interest in holding traffic violators uniformly accountable for bad driving.[39] The State also has a general deterrence interest that includes deterring juvenile drivers from engaging in unsafe driving behaviors such as driving while under the influence.[40] Such behavior inherently threatens public safety, especially when combined with minors' relative lack of driving experience.[41]

The State also acknowledges that it has an interest in promoting the rehabilitation of juvenile offenders.[42] It is well-established that the State "has a

---

[38] *See Ardinger v. Hummell*, 982 P.2d 727, 731 (Alaska 1999) ("Children who physically control vehicles must, for public safety reasons, be held to an adult standard of care.").

[39] *Cf. Titus*, 305 P.3d at 1278 (noting State's interest in deterring uninsured driving).

[40] *See* AS 12.55.005(5) (requiring sentencing judges to consider "the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct"); *Alvarez v. State, Dep't of Admin., Div. of Motor Vehicles*, 249 P.3d 286, 299 (Alaska 2011) ("The act of driving while intoxicated is an act of unfit driving, dangerous to the public."); *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) (noting that Alaska's Constitution includes the goal of "deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender").

[41] *Cf. Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 451 (1990) ("No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it.").

[42] *See* AS 47.12.010; *State v. Sandsness*, 72 P.3d 299, 302-04 (Alaska 2003) (noting rehabilitative goals of juvenile justice system and benefits of rehabilitation); *State v. Ladd*, 951 P.2d 1220, 1225 (Alaska App. 1998) ("There is a public interest in 'rehabilitating wayward youths' who are in fact 'rehabilitatable in their youth.' " (quoting *W.M.F. v. State*, 723 P.2d 1298, 1300 (Alaska App. 1986))).

substantial interest in [the] welfare" of minors,[43] and as discussed, minors "do[] not have mature judgment and may not fully realize the consequences of [their] acts."[44] It is through rehabilitation that juvenile offenders may be given "the skills needed to live responsibly and productively."[45]

### 3. There is not a close relationship between the State's interests and the classification.

Having identified the State's interests and determined that they are important, we next examine whether they bear "a close relationship" to the classification at issue.[46] The State must balance two important interests: deterring drivers from engaging in unsafe driving practices and providing rehabilitative support for minors. The classification scheme created by AS 47.12.030(b) and AS 28.35.030 does not achieve that balance.

Alaska Statute 47.12.030(b) requires that juveniles charged with non-felony traffic offenses be "charged, prosecuted, and sentenced in the district court in the same manner as [adults]" but permits juveniles charged with felony traffic offenses to be

---

[43] *Wilsonoff v. Wilsonoff*, 514 P.2d 1264, 1267 (Alaska 1973); *cf. Pub. Def. Agency v. Superior Court, Third Judicial Dist.*, 534 P.2d 947, 949 (Alaska 1975) ("Traditionally, the states have been legitimately concerned with the area of family law, and, under the doctrine of parens patriae, in particular, in the promotion of the welfare of children dwelling within their boundaries." (internal citations omitted)).

[44] *Henson v. State*, 576 P.2d 1352, 1354 (Alaska 1978) (quoting *P.H. v. State*, 504 P.2d 837, 841 (Alaska 1972), *superseded by statute*, ch. 63, §§ 13, 15, SLA 1977, *as recognized in In re F.S.*, 586 P.2d 607, 610 (Alaska 1978)).

[45] AS 47.12.010(a).

[46] *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1278-79 (Alaska 2013).

charged in juvenile court.[47] "It is a misdemeanor for a person to violate a provision [of Alaska's traffic statutes] unless the violation is . . . declared to be a felony or an infraction."[48] There are seven traffic offenses that are felonies instead of misdemeanors.[49] Of those seven felony offenses, five have lesser included offenses that are treated as misdemeanors.[50] Of those five lesser included offenses, there are only two that are structured based on an offender's conviction history and that include a mandatory minimum sentence of imprisonment — DUI and refusal to submit to a chemical test.[51] As discussed, misdemeanor DUI carries a mandatory minimum sentence of three days' imprisonment for a first offense and twenty days' imprisonment for a

---

[47]     AS 47.12.030(b)(1).

[48]     AS 28.90.010.

[49]     *See* AS 28.35.030(n) (third DUI conviction in past ten years); AS 28.35.032(p) (third conviction in past ten years for refusal to submit to chemical test); AS 28.35.060(a), (c) (driver involved in accident fails to render reasonable assistance to injured person); AS 28.35.161(f) (use of electronic devices while driving which causes physical injury to another person); AS 28.35.182(a), (e) (failure to stop at direction of peace officer while driving recklessly or driving stolen car, or if accident occurs or person suffers serious physical injury); AS 28.35.320 (willful neglect or refusal to return rental vehicle with intent to deprive owner of vehicle); AS 28.10.491 (altering, forging, or counterfeiting title, registration, or identification number, and removal and representation of vehicles).

[50]     *See* AS 28.35.030(a)-(b) (first or second DUI conviction); AS 28.35.032(a), (g) (first or second conviction for refusal to submit to chemical test); AS 28.35.060(a)-(b) (driver involved in accident fails to provide identifying information); AS 28.35.161(a), (f) (use of electronic devices while driving); AS 28.35.182(b) (failure to stop at direction of peace officer as soon as practical and safe).

[51]     AS 28.35.030(a)-(b) (DUI); AS 28.35.032(a), (g) (refusal to submit to chemical test).

second offense.[52]  Alaska Statutes 47.12.030(b) and 28.35.030 therefore create a structure where a minor who has had two or more prior DUI convictions is treated as a juvenile whereas a minor who has never been convicted of DUI is treated as an adult and subject to a minimum sentence of imprisonment.

This classification does not bear a close fit to the State's interest in deterrence.  That interest would arguably be better served by either (1) treating all juvenile DUI offenders, both misdemeanor and felony, as adults; or (2) treating juvenile felony DUI offenders, who are repeat offenders, as adults, and treating juvenile misdemeanor DUI offenders, who are either first- or second-time offenders, as juveniles.  We have previously found "a constitutionally adequate nexus to the state interest" where "[t]he gravity of the sanctions roughly follow[ed] the gravity of the circumstances."[53]  But as Watson argues, the classification at issue here "inverts traditional principles of criminal sentencing."

The classification also does not closely fit the State's interest in rehabilitation.  That interest would be better met by providing rehabilitative support to minors who are more amenable to rehabilitation — i.e., first-time offenders.[54]  But instead, the State's classification only offers rehabilitative support to offenders who have

---

[52]  AS 28.35.030(b)(1)(A)-(B); AS 28.35.030(b)(2)(A)(I).

[53]  *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1279 (Alaska 2013); *see also Bell v. State*, 598 P.2d 908, 914 (Alaska 1979) ("It is well settled that statutes may prescribe stiffer penalties for multiple offenders.").

[54]  *Cf. State v. Ladd*, 951 P.2d 1220, 1225 (Alaska App. 1998) ("There is a public interest in 'rehabilitating wayward youths' who are in fact 'rehabilitatable in their youth.'  On the other hand, society also has a significant interest in utilizing adult criminal sanctions to 'protect[] the public from youths who [cannot be] quickly rehabilitated.' " (alterations in original) (quoting *W.M.F. v. State*, 723 P.2d 1298, 1300 (Alaska App. 1986))).

already been convicted of DUI two or more times.[55] First-time juvenile DUI offenders are required to be charged as adults in district court,[56] and they do not receive the rehabilitative services that the juvenile justice system provides.

The State argues that "[t]he legislature reasonably decided to treat all drivers alike, with a narrow exception for minors who would otherwise be subject to felony penalties because in that case, the scales tip towards the juvenile justice model with the primary goals of rehabilitation and reformation." But the legislative history of AS 47.12.030(b) does not support that argument. Non-felony traffic offenses were specifically excluded from the juvenile court's jurisdiction in 1961.[57] Legislative history indicates that this exclusion occurred in order to process routine traffic violations in a more simplified and expeditious manner than would occur in juvenile court — i.e., for administrative efficiency, not to deter bad driving.[58]

---

[55]    *See* AS 47.12.030(b); AS 28.35.030(n).

[56]    *See* AS 47.12.030(b); AS 28.35.030(b).

[57]    Ch. 76, SLA 1961.

[58]    Governor William Egan introduced the bill that created what is now AS 47.12.030; he stated in a letter to the Chairman of the House Rules Committee:

> The main purpose and policy behind the special consideration given juveniles in our courts . . . is to avoid the stigma and emotional disturbances that often occur because of a criminal conviction. The purpose is to insure that the juvenile will not receive a bad start in life because of youthful mistakes.
>
> All of this is usually unnecessary when regulatory offenses not involving moral turpitude are in issue. There appears to be no reason why the offense of running a stop sign or excessive speed should not be processed as quickly

(continued...)

In 1969 the legislature eliminated an exception to the juvenile court exclusion statute that had permitted DUI offenders to remain in juvenile court.[59] But the offense of DUI in 1969 differed in several material respects from DUI today. First, DUI carried no mandatory minimum sentence, nor was it ineligible for suspended entry of judgment and suspended imposition of sentence.[60] In addition, in 1969 the offense of felony DUI did not exist,[61] and thus *all* minors charged with DUI faced the same treatment: being charged in the district court. Therefore, when the legislature excluded DUI from the juvenile court's jurisdiction, it did so at a time when there was no mandatory minimum sentence for DUI and the juvenile's age could be fully considered

---

[58]     (...continued)
and as expeditiously where a juvenile is concerned, as where an adult driver is involved.

Because of the very large number of traffic violations which involve juvenile drivers, simplification of juvenile procedures for the adjudication of these offenses . . . certainly is in the interests of the public.

1961 House Journal 197-98. In a subsequent letter, Governor Egan requested that the draft bill be amended to exclude DUI, reckless driving, and leaving the scene of an accident, as these offenses were "serious enough to indicate a need for Juvenile Court processing and planning." *Id.* at 199. The final bill included an exclusion for these three offenses. Ch. 76, § 1, SLA 1961.

[59]     Ch. 64, § 1, SLA 1969.

[60]     The legislature did not set a mandatory minimum sentence for DUI until nearly a decade later in 1978. Ch. 152, § 2, SLA 1978. And it did not disallow suspended imposition of sentence for DUI convictions until 1983. Ch. 77, § 14, SLA 1983. AS 28.35.030(b)(2) now provides that the court may not suspend imposition of sentence for misdemeanor DUI, and it may not suspend execution of sentence except on condition that the offender serve the minimum term of imprisonment.

[61]     The legislature did not create felony DUI until 1995, which at that time meant a third DUI offense within five years. Ch. 80, § 7, SLA 1995.

by the district court. It also did so at a time when the offense of felony DUI did not exist — therefore the legislature could not have been consciously balancing competing interests in differentiating treatment for the two offenses as the State claims. Rather, the legislative history shows that the legislature excluded DUI from the juvenile court's jurisdiction and then later made changes to the criminal code that affected the significance of that earlier exclusion. As far as the legislative history shows, the legislature was likely unaware that these changes inverted the principles of criminal sentencing for juvenile DUI offenders.

Alaska Statutes 47.12.030(b) and 28.35.030 thus create a sentencing structure where the "gravity of the sanctions" does not "roughly follow the gravity of the circumstances."[62] And that structure does not align with the State's interests in deterring bad driving and providing rehabilitative support for minors.[63] Because there is not a close relationship between the State's interests and the classification, AS 47.12.030(b) violates Watson's equal protection rights.[64]

---

[62] *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1279 (Alaska 2013).

[63] *See Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1143 (Alaska 2016) (looking to whether State's asserted interests justify distinction between two classes that are similarly situated); *State v. Ladd*, 951 P.2d 1220, 1225 (Alaska App. 1998) ("In deciding which minors should receive juvenile delinquency dispositions for criminal acts, the legislature can draw distinctions between different groups so long as those distinctions are not arbitrary or based on a discriminatory classification.").

[64] I likewise note that the field of juvenile sentencing is presently in a state of flux and at least one sister court has even invalidated all mandatory prison sentences for juveniles as cruel and unusual under its state constitution. *See State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014), *as amended* (Sept. 30, 2014); *cf. Miller v. Alabama*, 567 U.S. 460, 479 (2012) ("[T]he Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."); *Burrell v. State*, 207

(continued...)

**D.      Remedy**

Because I have concluded that AS 47.12.030(b) violates Watson's equal protection rights, I must now address the question of what remedy should follow from that conclusion. The State argues that if we declare AS 47.12.030(b) invalid, then minors accused of non-felony traffic offenses would effectively be immunized from prosecution pending legislative action. But this concern is unfounded.[65] Alaska Statute 47.12.020(a) defines juvenile court jurisdiction and provides that "[p]roceedings relating to a minor [alleged to have violated a criminal law] . . . are governed by this chapter, except as otherwise provided in this chapter." Alaska Statute 47.12.030 then describes the specific offenses that are excluded from the juvenile court's broad jurisdiction over minors under 18 years of age; as discussed, misdemeanor DUI is one of the offenses excluded. Invalidating this exclusion will not render juvenile misdemeanor DUI offenders immune from prosecution; under AS 47.12.020, the juvenile court's jurisdiction will automatically extend to *all* juvenile DUI offenders.

I conclude that excluding misdemeanor DUI, but not felony DUI, from juvenile court jurisdiction violates equal protection, and AS 47.12.030(b) is therefore invalid as applied to juvenile misdemeanor DUI.[66]

_____

[64]      (...continued)
A.3d 137, 145 (Del. 2019) (reasoning that state legislature "adequately addressed the constitutional concerns identified in *Miller*" with criminal statute prescribing different mandatory minimum sentence for juveniles). The parties in this case did not raise this issue so we have no occasion to address it.

[65]      *See Egan v. Hammond*, 502 P.2d 856, 871 (Alaska 1972) ("A statute bad in part is not necessarily void in its entirety." (quoting *Dorchy v. Kansas*, 264 U.S. 286, 289 (1924))).

[66]      The same is true as applied to juvenile misdemeanor charges for refusal to
(continued...)

## V. CONCLUSION

I therefore would reverse the court of appeals' decision affirming the district court's judgment and remand this case for further proceedings consistent with my dissenting opinion.

---

[66] (...continued)
submit to a chemical test under AS 28.35.032(a), (g).